No. 23-2923

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

Frank W. Bibeau,

Appellant,

vs.

Commissioner of Internal Revenue,

Appellee.

_____

On Petition for Review of Final Order of the United States Tax Court, Docket No. 11483-20L

_____

## APPELLANT'S BRIEF

_____

Frank Bibeau (MN #306460)
BIBEAU LAW OFFICE
909 NW Ninth Street
Grand Rapids, MN 55744
Telephone: (218) 760-1258
Email: frankbibeau@gmail.com

*Attorney for Appellant*

## SUMMARY OF THE CASE

This case involves the applicability of the U.S. Tax Code – a federal statute – to tax the individual income of all Indians. Bibeau is an enrolled member of the Minnesota Chippewa Tribe, living and working on the Leech Lake Reservation in Minnesota. He makes a living as an attorney, defending the tribal treaty protected rights held by the Chippewa as usufructuary and reserved property rights.

The Tax Court ruled Bibeau is liable for federal income tax based on tax court precedents holding the Internal Revenue Code applies to everyone, including American Indians, and that tax exemptions are not granted, by implication, to Indians.

Bibeau argues that the Indian Citizenship Act of 1924 is entirely void of any clear and precise language authorizing the taxation of Indians. The Indian Law canons of construction as recognized by the Supreme Court and this Court must be applied instead of tax canons, to respect the historic tax immunity Indian nations held prior to and during treaty making with the United States, recorded as Indians not taxed. Bibeau asks this Court to reverse the ruling of the Tax Court below, and find that Congress never authorized the federal taxation of the income of Indians; or, in the alternative, to find that federal taxing authority cannot reach income derived from specific, treaty-protected activities.

Appellant Bibeau requests 30 minutes for oral argument.

i

## CORPORATE DISCLOSURE STATEMENT

The Appellant is an individual, human person, not a corporation.

Appellate Case: 23-2923     Page: 3     Date Filed: 01/17/2024 Entry ID: 5354249

Table of Contents

SUMMARY OF THE CASE ................................................................... i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

TABLE OF AUTHORITIES................................................................... v

**JURISDICTIONAL STATEMENT**................................................... 1

**STATEMENT OF ISSUES** ............................................................. 2

**STATEMENT OF THE CASE** ........................................................ 2

**Statement of the Facts** ................................................................ 3

**Summary of the Arguments** ....................................................... 4

**STANDARD OF REVIEW** ............................................................ 6

**I. Standard of Review** ................................................................. 6

**II. Principles of Treaty and Statutory Interpretation** ................... 6

**ARGUMENTS**.............................................................................. 7

I.   WHETHER THE TAX COURT ERRED IN HOLDING THE
COMMISSIONER OF INTERNAL REVENUE IS AUTHORIZED TO IMPOSE
ITS INCOME TAX ON INDIANS, WHERE THE ONLY BASIS FOR
IMPOSITION OF THE TAX IS *INFERRED* FROM THE LANGUAGE OF THE
INDIAN CITIZENSHIP ACT OF 1924?................................................ 7

**United States Citizenship has been used for the implied or inferred nexus to
the power to federally tax Indians income.** ....................................... 7

**Misinterpreting the Indian Citizenship Act of 1924.** ...................... 10

**II.  WHETHER THE TAX COURT ERRED IN HOLDING THE FEDERAL
TAX LAW CANONS TAXING A TRIBAL MEMBER'S INCOME
WITHOUT A CLEAR *TAX EXEMPTION* CONTROLS OVER THE INDIAN
LAW CANONS TO DETERMINE HOW THE CHIPPEWAS UNDERSTOOD
TREATY RIGHTS?** .......................................................................... 17

**Principles of Treaty and Statutory Interpretation**............................ 17

**Competing Canons of Law**........................................................... 18

**Chippewa Treaty Rights Canons of Construction** ........................... 21

**Chippewa Treaties inherent, ambiguous and silent reserved rights**.............. 25

Appellate Case: 23-2923      Page: 4      Date Filed: 01/17/2024 Entry ID: 5354249

**End of Treaty Making by Congress.** ....................................................29

**Strictly construed tax exemptions are unreasonable and erroneous standard** ....................................................................................................30

***Capoeman* is the wrong precedent without Indian law canons analysis** ........31

**Tax immunity of Indians is property right protected by the 5th Amendment requiring Congressional due process to abrogate. Trust responsibility?** ......32

**The same *tension* in the canons of construction still exist today, and split the 8th Circuit in *FDL v Frans*.** ....................................................35

**CONCLUSION** ............................................................................36

**CERTIFICATE OF COMPLIANCE** ..........................................38

**CERTIFICATE OF SERVICE** ..................................................39

Appellate Case: 23-2923    Page: 5    Date Filed: 01/17/2024 Entry ID: 5354249

TABLE OF AUTHORITIES

## Cases

*Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt. No. 11483-20L, filed May 24, 2023 ................................................ 9, 19, 31

*Carpenter v. Shaw*, 280 U.S. 363, 367 (1930) ................................................ 36, 37

*Chickasaw Nation v U.S.*, 534 U.S. 84, 101-102, 122 S.Ct. 528, 539 (2001) ......... 23

*Choate v. Trapp*, 224 U.S. 665, 675 (1912) ................................................ 35, 36

*Choctaw Nation v. United States*, 318 U.S. 423, 432, 63 S.Ct. 672, 87 L.Ed. 877 (1943) ................................................ 17

*Clay v. Commissioner of Internal Revenue*, 990 F.3d 1296, 11th Cir. (2021), 127 A.F.T.R.2d 2021-1207, 28 Fla. L. Weekly Fed. C 2534 ................................................ 14

*Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 99 L.Ed. 483 (1955) ................................................ 14

*EEOC v. Fond du Lac Heavy Equip. & Constr. Co.*, 986 F.2d 246, 248 (8th Cir. 1993) ................................................ 31

*El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 167, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) ................................................ 17

*Fond du Lac Band of Lake Superior Chippewa v. Frans* (2011) ..................... 20, 24

*Herrera v Wyoming* 139 S.Ct. 1686 (2019) ................................................ 12, 22, 30

*Jourdain v. Commissioner*, 71 T.C. 980, 990 (1979) ....................................... 15, 35

*Leech Lake Band of Chippewa Indians v. Herbst*, 334 F.Supp. 1001 (D.Minn.1971) ................................................ 30

*Marambo v. Barr*, 932 F.3d 650, 654 (8th Cir. 2019). ......................................... 12

*McCamant v. Commissioner*, 32 T.C. 824, 834 (1959) ...................................... 35

*McClanahan v. Arizona Tax Comm'n* ................................................ 23, 40

*Menominee Tribe v. United States*, 391 U.S. 404, 413, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968) ................................................ 8, 37

*Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137–41, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) ................................................ 31

*Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). ................................................ 14

*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196 (1999) ................................................ 8, 12, 22, 26

*Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985) .................. 12, 22

*Montgomery v. Commissioner*, 122 T.C. 1, 10 (2004) ........................................ 7

*Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 464, 115 S.Ct. 2214,

v

132 L.Ed.2d 400 (1995) ................................................................... 40

*Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 123–26, 113 S.Ct. 1985,
124 L.Ed.2d 30 (1993). ................................................................... 40

*Scalia v. Red Lake Nation Fisheries, Inc.*, 982 F.3d 533 (2020) ............................ 31

*Squire v Capoeman* at 220 F.2d 349 (9th Cir. 1955) .......................................... 26

*Squire v. Capoeman*, 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956) ........ passim

*Strate v. A–1 Contractors*, 520 U.S. 438, 445, 117 S.Ct. 1404,
137 L.Ed.2d 661 (1997) .................................................................... 31

*U.S. v Brown*, 2013 WL 6175202 .................................................. 8, 30, 31, 32

*U.S. v Brown*, 777 F.3d 1025 (2015) ............................................ 8, 12, 22, 30

*U.S. v. Smiskin*, 487 F.3d 1260 (2007) ............................................ 27, 31, 40

*U.S. v. Sohappy*, 770 F.2d 816, 821 (9th Cir.1985) .......................................... 32

*United States v. Burke*, 504 U.S. 229, 233, 112 S.Ct. 1867,
119 L.Ed.2d 34 (1992) ...................................................................... 13

*United States v. Dion*, 476 U.S. 734, 738, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986).8,
31, 37

*United States v. Winans*, 198 U.S. 371, 380-381, 25 S.Ct. 662, 49 L.Ed. 1089
(1905). .................................................................................... 8, 18, 27

*Washington State Commercial Passenger Fishing Vessel Assn.*, 443 U.S. 658,
675-676, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979) ................................ 8, 18, 27, 37

*Winters v. United States*, 207 U.S. 564, 576 (1908) ........................................ 8, 21

*Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 552 ............................................ 22


**Statutes**

1826 Treaty with the Chippewa .................................................................. 27, 28

1834 Trade and Intercourse Act ................................................................. 30

26 U.S.C. § 61(a). ........................................................................... 13

26 U.S.C. § 7482(b)(1)(G)(i) .................................................................. 7

8 U.S.C.A. § 1401(b) ......................................................................... 24

General Allotment Act ........................................................................ 26

*Immigration and Nationality Act of 1952* .................................................... 19, 20

Indian Citizenship Act of 1924 ........................................................... passim

Indian Gaming Regulatory Act (Pub. L. 100–497, 25 U.S.C. § 2701 et seq. .......... 14

*Nationals and Citizens of the U.S. at Birth Act* ............................................. 20

Revenue Act of 1924 .......................................................................... 17

Table of Chippewa Treaties 1785-1867 ........................................................ 29

Appellate Case: 23-2923    Page: 7    Date Filed: 01/17/2024 Entry ID: 5354249

**Other Authorities**

35 Op. Atty. Gen. 1 (1925)........................................................................38

*Challenging American Boundaries: Indigenous People and the "Gift" of U.S. Citizenship*, Kevin Bruyneel, Babson College, Studies in American Political Development, 18 (Spring 2004) .................................................... 19, 36

Appellate Case: 23-2923     Page: 8     Date Filed: 01/17/2024 Entry ID: 5354249

# JURISDICTIONAL STATEMENT

Appellant Bibeau timely petitioned the United States Tax Court, and challenged only his liability for tax years 2016 and 2017. Because the Commissioner assessed the tax as Bibeau reported it on his returns, Bibeau had the right to challenge this liability at the hearing. See *Montgomery v. Commissioner*, 122 T.C. 1, 10 (2004). The parties submitted the case for decision on stipulated facts. (See *Stipulation of Facts* App 234, Tax Ct. Rec. V2 pp 34-42). The Tax Court filed its *Decision* on May 25, 2023, (Add 07, App 007, Tax Ct. Rec. V3 p 313) following the *Memorandum Opinion* of the Court in T.C. Memo. 2023-66, filed May 24, 2023, (Add 01-06, App 001-006, Tax Ct. Rec. V3 p 307-312) where it was DECIDED that respondent Commissioner of Internal Revenue may proceed with the collection of Appellant's federal income-tax liability for the tax years 2016 and 2017.

The Section 7481 governs the finality of a Tax Court decision. Appellant filed his notice of appeal on August 21, 2023. The Court of Appeals has jurisdiction over this matter because Appellant Bibeau was a resident of Minnesota when he filed his petition, appellate venue presumptively lies in the Eighth Circuit. See 26 U.S.C. § 7482(b)(1)(G)(i).

1

## STATEMENT OF ISSUES

I.     WHETHER THE TAX COURT ERRED IN HOLDING THE FEDERAL
       TAX LAW CANONS TAXING A TRIBAL MEMBER'S INCOME
       WITHOUT A CLEAR *TAX EXEMPTION* CONTROLS OVER THE
       INDIAN LAW CANONS TO DETERMINE HOW THE CHIPPEWAS
       UNDERSTOOD TREATY RIGHTS?

       *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196
       (1999)
       *United States v. Brown*, 777 F.3d 1025, 1031 (8th Cir. 2015)
       *United States v. Dion*, 476 U.S. 734, 738, 106 S.Ct. 2216, 90 L.Ed.2d 767
       (1986)
       *Washington State Commercial Passenger Fishing Vessel Assn.*, 443 U.S.
       658, 675-676, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979)

II.    WHETHER THE TAX COURT ERRED IN HOLDING THE
       COMMISSIONER OF INTERNAL REVENUE IS AUTHORIZED TO
       IMPOSE ITS INCOME TAX ON INDIANS, WHERE THE ONLY
       BASIS FOR IMPOSITION OF THE TAX IS *INFERRED* FROM THE
       LANGUAGE OF THE INDIAN CITIZENSHIP ACT OF 1924?

       *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196
       (1999)
       *Menominee Tribe v. United States*, 391 U.S. 404, 413, 88 S.Ct. 1705, 20
       L.Ed.2d 697 (1968).
       *Winters v. United States*, 207 U.S. 564, 576 (1908)
       *United States v. Winans*, 198 U.S. 371, 380-381, 25 S.Ct. 662, 49 L.Ed.
       1089 (1905).

## STATEMENT OF THE CASE

This case involves the applicability of the U.S. Tax Code – a federal statute –

to tax the individual income of all Indians.  The Tax Court ruled Bibeau is liable for

2

federal income tax based on tax court precedents holding the Internal Revenue Code (IRC) applies to everyone, including American Indians, and that tax exemptions are not granted, by implication, to Indians.

Bibeau argues that the IRC relies on the Indian Citizenship Act of 1924, which is entirely void of any clear and precise language authorizing the taxation of Indians. Bibeau asks this Court to reverse the ruling of the Tax Court below and find that Congress never authorized the federal taxation of the income of Indians; or, in the alternative, to find that federal taxing authority cannot reach income derived from specific, treaty-protected activities. (see *Memorandum Opinion* dated May 24, 2023 (Add 01-06, App 001-006, Tax Ct. Rec. V3 p 307-312) and *Decision* dated May 25, 2023) (Add 07, App 007, Tax Ct. Rec. V3 p 313)

### Statement of the Facts

Appellant is an enrolled member of the Minnesota Chippewa Tribe, residing on Leech Lake Reservation. (*Stipulation of Facts*, App 244, Item 11, Tax Ct. Rec. V2, p 36). The Minnesota Chippewa Tribe (MCT) is recognized by the federal government (i.e., the United States Department of the Interior). (Id. App 244 Item 10, Tax Ct. Rec. p 37). Appellant resided at 51124 County Road 118, Deer River, MN 56636 when the petition was filed in this matter. (Id. App 241, Item 1, Tax Ct. Rec. p 34). Appellant is an attorney licensed by the Supreme Court of Minnesota, Minnesota license number 306460, and he is in good standing. (Id. App 243, Item

3

8, Tax Ct. Rec. p 36). Appellant resides and keeps his legal office within the exterior boundaries of the Leech Lake Reservation, one of six MCT reservations. (Id. App 244, Item 11, Tax Ct. Rec. p 37). The nature of most of Appellant's work focused on

- Legal Representation as assigned presently including the MN Public Utilities Commission and MN agencies with regard to, Enbridge's Line 3 oil pipeline, permitting, state, federal and tribal courts and forums.

- Identify and develop legal strategies and opportunities to defend natural resources related to tribal and individual treaty rights on and off reservation with a focus on protecting wild rice and waters.

- Work collaboratively with tribes, other environmental attorneys and groups as directed or determined necessary including the press. For example, [Appellant] represented Honor the Earth before the Minnesota Public Utilities Commission in regard to Enbridge's Line 3 Replacement pipeline project application.

Id. App 246, Item 19, Tax Ct. Rec. V2 pp 39-40.

Appellant asks this Court to reverse the ruling of the Tax Court below, and find that Congress never authorized the federal taxation of the income of Indians; or, in the alternative, to find that federal taxing authority cannot reach income derived from specific, treaty-protected activities.

## Summary of the Arguments

Federal income taxation of Indians has never been authorized by Congress. Yet, regardless of that lack of congressional authorization, the federal

4

government has continued to collect those income taxes from tribal members for the past hundred years.

Appellant Frank Bibeau is an enrolled member of the Minnesota Chippewa Tribe, living and working on the Leech Lake Reservation in Minnesota. He makes a living by defending the tribal treaty protected rights held by other Chippewa as usufructuary and reserved property rights, and through traditional, treaty-protected fishing, hunting, and wild rice-gathering. Through this action, Bibeau argues that the U.S. lacks the authority to tax his income derived from those activities.

In the Tax Court below, Bibeau asserted that while Indians were proclaimed by Congress to be "citizens" of the U.S. by the Indian Citizenship Act of 1924, the Act could not – and did not - create a federal income tax on Indians. Bibeau argued that the Act could not create the authority to tax because prior treaties with the Chippewa did not recognize the authority of the U.S. to tax tribal members. The Act did not create the authority to tax because instead it contained a clause protecting Indian property rights with no mention of taxation.

The Tax Court erred by failing to examine whether the Act authorized federal taxation of Indians, and whether pre-existing treaties with the Chippewa required Congress to express specific intent to abrogate those treaties with federal taxing authority. Instead of engaging in that inquiry, the Tax Court

5

reiterated prior tax jurisprudence that the Act implied the authority to tax. The Court then predictably failed to find an exemption for Indians from being subject to income tax.

Appellant Bibeau asks this Court to reverse the ruling of the Tax Court, and find that Congress never authorized the federal taxation of the income of Indians; or, in the alternative, to find that federal taxing authority cannot reach income derived from specific, treaty-protected activities.

## STANDARD OF REVIEW

### I. Standard of Review

The applicability of the Tax Code and Revenue Act to the Appellant is a question of law which is reviewed de novo. *Marambo v. Barr*, 932 F.3d 650, 654 (8th Cir. 2019).

### II. Principles of Treaty and Statutory Interpretation

"Treaty analysis begins with the text," and treaties "are construed as they would naturally be understood by the Indians." *Herrera v. Wyoming*, 139 S. Ct. 1686, 1701 (2019) (citation omitted). A court is to "look beyond the written words to the larger context that frames the Treaty, including 'the history of the treaty, the negotiations, and practical construction adopted by the parties. *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196 (1999) (citation omitted).

6

Treaties are to be interpreted "liberally, resolving uncertainties in favor of the Indians[.]" *United States v. Brown*, 777 F.3d 1025, 1031 (8th Cir. 2015) (citing *Mille Lacs*, 526 U.S. at 200).

Statutes, likewise, are to be "construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit[.]" *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).

## ARGUMENTS

I.     WHETHER THE TAX COURT ERRED IN HOLDING THE COMMISSIONER OF INTERNAL REVENUE IS AUTHORIZED TO IMPOSE ITS INCOME TAX ON INDIANS, WHERE THE ONLY BASIS FOR IMPOSITION OF THE TAX IS *INFERRED* FROM THE LANGUAGE OF THE INDIAN CITIZENSHIP ACT OF 1924?

Congress has never adopted a straight-up, *per se* Indian Tax Act, with the clear and precise language for the specific purpose of federal income taxation of individual Indians, on their incomes, personal and/or tribal properties, whether on or off reservation, or from trust lands. Congress has adopted many unique acts and laws that pertain to individual Indians and Tribes that might include a tax concept, but not a clear and precise, express federal income tax act for all Indians in general.

**United States Citizenship has been used for the implied or inferred nexus to the power to federally tax Indians income.**

7

U.S. Citizenship has been used for the *implied* or *inferred* nexus to the

power to tax all Indians.  According to the 11th Circuit, the Internal Revenue

Service (IRS) and the Tax Court's start point for exercising the federal power to tax

an Indian's income happens because

> [t]he Internal Revenue Code casts a wide net. *For starters, it applies to everyone, including American Indians*. See *Squire v. Capoeman*, 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956). It also applies to everything—at least, everything that makes up one's "gross income." 26 U.S.C. § 61(a). And the definition of gross income "sweeps broadly," including "all income from whatever source derived." *United States v. Burke*, 504 U.S. 229, 233, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (quoting 26 U.S.C. § 61(a)). Unless there is a specific exemption, all gains are subject to taxation. See *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 99 L.Ed. 483 (1955).
> . . .
> The problem for [the Indians] is that any tax exemption must be "clearly expressed." *Capoeman*, 351 U.S. at 6, 76 S.Ct. 611. Absent "clear statutory guidance" we "ordinarily will not imply tax exemptions." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973).

See *Clay v. Commissioner of Internal Revenue*, 990 F.3d 1296, 11th Cir. (2021),

127 A.F.T.R.2d 2021-1207, 28 Fla. L. Weekly Fed. C 2534. (Emphasis added).

The 2021 *Clay* tax issue was related to the Indian Gaming Regulatory Act

(IGRA)[1], where Miccosukee Tribal members had not disclosed per capita

distributions by the Miccosukee Tribe to Clay and other tribal members, which per

---

[1]  Indian Gaming Regulatory Act (Pub. L. 100–497, 25 U.S.C. § 2701 et seq.)

capita payments are subject to Federal taxation and tribes notify members of such

tax liability when payments are made.  Id.

      Here, Appellant

> is an enrolled member of the Chippewa tribe who lives and practices
> law on the Leech Lake Reservation in Minnesota.  In a treaty with the
> United States,  the Chippewa kept the right to "hunt, fish, and gather
> the wild rice" on their traditional lands. Bibeau says this is really the
> right to "food, clothing and shelter and travel, whereby the new canoe
> is the automobile." He argues that this means that income from his
> law practice is tax exempt.

 See *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66,

Dkt. No. 11483-20L, filed May 24, 2023.[2] (Add 01-06, App 001-006, Tax

Ct. Rec. V3 pp 307-313).

      The Tax Court explained the conflicts of Supreme Court law whereby

"[t]he canons that require us to strictly construe exemptions from income

tax[3], however, are *in tension* with those [canons] that govern the

---

[2] See also *2017 Tax Affidavit* of Appellant, item 4, "That I reside within the exterior
boundaries of the Leech Lake Reservation, one of six MCT reservations, and reside
on land held in trust by the United States of America for the Minnesota Chippewa
Tribe, where I keep my legal office."  (*Stipulation of Facts*, App 244, Item 11, Tax
Ct. Rec. p 37).

[3] See *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66,
Dkt. No. 11483-20L, filed May 24, 2023. (Add 01-06, App 001-006, Tax Ct.
Rec. V3 p 311). "When it comes to exemptions from tax, however, the
Supreme Court has stated "that Indians are citizens and that in ordinary
affairs of life, not governed by treaties or remedial legislation, [Indians] are
subject to the payment of income taxes as are other citizens." *Capoeman*,
351 U.S. at 6. This means that the absence of tax terms from a treaty does
not imply the Indians reserved their right to be free of taxation— instead, it

9

interpretation of treaties between the Indian tribes and the United States."[4]

Appellant argues that under the U.S. Constitution, Treaties are the supreme

laws of the land,[5] and "the Congress shall have Power to regulate Commerce

with foreign Nations, and among the several States, and with the Indian

Tribes; . . . ."[6] Appellant argues further that Congress has not provided a

clear and precise act with the specific, express language to show the intent to

federally tax individual Indian's income. Moreover, Chippewa Indians have

an historic, *tax immunity* because Indians were a separate sovereign nation,

and which is *property right* under the Fifth Amendment requiring due

process by Congress under the Indian Commerce Clause.

**Misinterpreting the Indian Citizenship Act of 1924.**

The 11th Circuit *Clay* Court does not consider the 1924 Indian Citizenship

Act or its provision, but twice cites *Mescalero* declaring that "clear statutory

---

means that an exemption from taxation does not exist. In other words, "tax
exemptions are not granted, by implication, to
Indians." *Jourdain v. Commissioner*, 71 T.C. 980, 990 (1979).

[4] See *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt.
No. 11483-20L, filed May 24, 2023. (Add 01-06, App 001-006, Tax Ct. Rec. V3 p
308).

[5] U.S. Const. Art. VI, "This Constitution, and the laws of the United States which
shall be made in pursuance thereof; and all treaties made, or which shall be made,
under the authority of the United States, shall be the supreme law of the land;"

[6] See U.S. Const. Article I, Section 8, Clause 3, Commerce Clause with Indian
Tribes who were the *Indians not taxed*.

10

guidance" is required.[7]   Appellant argues the same Indian canon must apply here, too, where *clear statutory guidance* must be found, instead of the *implied* or *inferred* Congressional intent to federally tax all Indians' income.  The Act of Congress with the clear and precise language that made Indians citizens in 1924, also *clearly intended* to limit the Act's collateral scope and susceptibility, including removing the word "full" from "full citizenship in the bill"[8], so as to expressly prevent any manner of impairment or otherwise negatively affect any of the property rights of any Indian by declaring

> *[b]e it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all non citizen Indians born within the territorial limits of the United States be, and they are hereby, declared to be citizens of the United States: *Provided* That the granting of such citizenship shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property.

Approved, June 2, 1924. June 2, 1924. [H. R. 6355.] [Public, No. 175.], Sixty-eighth Congress Sess. I. CH. 233. 1924. (*Emphasis* in original).

---

[7] See Clay at 1300 and 1302.

[8]  See App. Ex. 11. https://www.thoughtco.com/indian-citizenship-act-4690867 Indian Citizenship Act: Granted Citizenship but Not Voting Rights, By Robert Longley, Updated on June 10, 2022. Progressive senators and activists, like the "Friends of the Indians," and senators on the Senate Indian Affairs Committee were for the Act because they thought it would reduce corruption and inefficiency in the Department of Interior and the Bureau of Indian Affairs. The removal of the word "full" from "full citizenship" in the final text of the bill was used as a reason why some Native Americans were not immediately granted the right to vote after the enactment of the law.

Appellate Case: 23-2923     Page: 19     Date Filed: 01/17/2024 Entry ID: 5354249

Important to note is that the very next law approved on June 2, 1924 was [H. R. 6715.] [Public, No. 176.], Sixty-eighth Congress Sess. I. CH. 234. *An Act To reduce and equalize taxation, to provide revenue, and for other purposes*, which may be cited as the "Revenue Act of 1924".[9]  No mention of *Indians* in that Act. The *Mille Lacs* Court provides guidance

> to determine whether this language abrogates Chippewa Treaty rights, we look beyond the written words to the larger context that frames the Treaty, including "the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Choctaw Nation v. United States*, 318 U.S. 423, 432, 63 S.Ct. 672, 87 L.Ed. 877 (1943); see also *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 167, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999). In this case, an examination of the historical record provides insight into how the parties to the Treaty understood the terms of the agreement. This insight is especially helpful to the extent that it sheds light on how the Chippewa signatories to the Treaty understood the agreement because we interpret Indian treaties to give effect to the terms as the Indians themselves would have understood them. See *Washington v. Washington State Commercial Passenger Fishing Vessel Assn.*, 443 U.S. 658, 675-676, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979); *United States v. Winans*, 198 U.S. 371, 380-381, 25 S.Ct. 662, 49 L.Ed. 1089 (1905).

Id. at 1200-1201.

At the time of the treaties, tribes were separate nations from the U.S. and sovereigns cannot tax another sovereign.  The plain and clear language of the 1924 Indian Citizenship Act's proviso is meant to be preventative of impairments if not

---

[9] Id. Section 1.  The Act is 103 pages long and the term "Indian" is never found.

Appellate Case: 23-2923    Page: 20    Date Filed: 01/17/2024 Entry ID: 5354249

preemptive of infringement on sovereignty and an Indian's tribal and other

property rights.[10]  For the Chippewa

> [i]n July 1924, a little over a month after the passage of the Indian
> Citizenship Act, the Chippewa Indians of Minnesota held their annual
> general council meeting at Cass Lake, Minnesota [on Leech Lake
> Reservation]. In his opening address to a council composed of more
> than seventy delegates representing ten reservations, Benjamin
> Caswell, President of the Chippewa Indians, Incorporated, stated:
>
> > A law has been passed making the Indians full citizens of the
> > United States and of the States wherein they reside and it will
> > not be for very much longer that we will gather together in this
> > fashion. Therefore the time has come for the Chippewa
> > Indians "to make hay while the sun shines."40[11]
>
> This telling statement represents how some indigenous political
> leaders foresaw the impact that the ICA could have on their tribal
> communities and political claims. As discussed earlier, the precise
> legal language of the ICA promised to grant U.S. citizenship without
> threatening tribal property rights.

Id. at 37-38, see *Our Citizenship is in Our Own Nations*.

---

[10] See *Challenging American Boundaries: Indigenous People and the "Gift" of
U.S. Citizenship*, Kevin Bruyneel, Babson College, Studies in American Political
Development, 18 (Spring 2004).  Bruyneel describes "how indigenous people of
this era viewed the prospect of becoming and being U.S. citizens. In this regard, I
have found that two distinct and direct indigenous responses to the prospect of U.S.
citizenship prevailed at this time: (1) support for it as a just measure to secure the
longstanding political identity of indigenous people in America; and (2) outright
rejection of it in the name of tribal sovereignty and citizenship.
https://www.academia.edu/1613614/Challenging_American_Boundaries_Indigeno
us_People_and_the_Gift_of_U_S_Citizenship
[11] Id. at FN 40 in block quote, *Chippewa Indians of Minnesota, Inc.*, "Minutes of
Annual Meeting Held at Cass Lake, Minnesota," 8–10 July 1924, 1–2, in Council
Meetings of the Major American Indian Tribes, 1907–1971. (Frederick, MD:
University Publications of America, 1981–1984), reel 14, at 694.

Here for Appellant, and in *Capoeman*, the 1939 tax code is boot-strapping

onto an unrelated federal, non-tax code statute in The *Immigration and Nationality*

*Act of 1952*[12], Sec. 301[13] and current codification at 8 U.S.C.A. § 1401(b)

*Nationals and citizens of United States at Birth.*[14] The IRS uses 1401(b) to decide

who are citizens the IRS can tax.  However, Title 8 U.S.C.A. standing alone relates

to immigration, aliens, deportation, entry and exclusion, citizens, noncitizens and

nationality of individuals, etc.  The *Nationals and Citizens of the U.S. at Birth Act*[15]

also includes and identifies Indians as citizens using the 1924 Act's language and

verbatim proviso.

> (b) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe: *Provided,* That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property;

See 8 U.S.C.A. § 1401(b). (*Emphasis* in original).

---

[12] The *Immigration and Nationality Act of 1952* (Pub. L. 82–414, 66 Stat. 163, enacted June 27, 1952), also known as the McCarran–Walter Act, codified under Title 8 of the United States Code (8 U.S.C. ch. 12), governs immigration to and citizenship in the United States.

[13] Title III—Nationality and Naturalization Ch. 1, Nationality at Birth and by Collective Naturalization Nationals and Citizens of the U.S. at Birth Sec. 301. [8 U.S.C. 1401] The following shall be nationals and citizens of the United States at birth. As Amended Through P.L. 117-360, Enacted January 5, 2023.

[14] 8 U.S.C. § 1401 - U.S. Code - Unannotated Title 8. Aliens and Nationality § 1401. Nationals and citizens of United States at birth

[15] 8 U.S.C.A. § 1401(b)

Appellate Case: 23-2923    Page: 22    Date Filed: 01/17/2024 Entry ID: 5354249

The *1924 Indian Citizenship Act* and *1952 Nationals and citizens of United States at Birth Act* inclusion in 8 U.S.C.A. § 1401(b) with proviso was discussed, but not briefed, by the 8th Circuit in *Fond du Lac Band of Lake Superior Chippewa v. Frans* (2011)[16]. A review of both parties' briefs[17] (FDL & Frans) filed with the 8th Circuit, reveals no mention of the Indian Citizenship Act of 1924 or 8 U.S.C.A. § 1401(b). The *Mille Lacs* decision and *Dion* were both argued in the brief filed by FDL[18] but neither Supreme Court case was mentioned by the dissent or majority in the opinion. Yet, in the *FDL v Frans* split decision, both the majority and dissent openly comment on each other's misunderstandings of both the Indian Citizenship Act of 1924 and 8 U.S.C.A. § 1401(b) proviso, which split appears to decide the *FDL v Frans* case.[19]

---

[16] *Fond du Lac Band of Lake Superior Chippewa v Frans*, 649 F.3d 849, (2011) See additional discussion *infra*. FDL Band sued to challenge Minnesota's taxation of the out-of-state, Ohio pension income of on reservation band members. That Panel's spilt decision was about citizenship and creation of tax immunity, and neither *Mille Lacs* nor *Dion* canons of construction for treaty rights analysis was discussed by the Panel.

[17] See *Brief of Plaintiff*-Appellant Fond du Lac Band of Lake Superior Chippewa 2010 WL 1178101 and see also *Brief of Appellee* Commissioner Ward Einess (later Frans) of Minn. Dept. of Revenue, No. 10-1236, Date Filed: 04/15/2010, Entry ID: 3655662.

[18] Id. *Brief of Plaintiff*-Appellant Fond du Lac Band of Lake Superior Chippewa 2010 WL 1178101

[19] See *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt. No. 11483-20L, filed May 24, 2023. (Add 05, App 005, Tax Ct. Rec. V3 p 311). where tax court states the 8th Circuit has *squarely held* that the Indian Citizenship Act maintained Indians' "pre-existing right to tribal and other property" but "does not create a tax exemption."

Appellate Case: 23-2923     Page: 23     Date Filed: 01/17/2024 Entry ID: 5354249

The application of tax law canons requiring an express *tax exemption* for Indian treaties is unreasonable because the 44 Chippewa Treaties were from 1785 to 1867. Congress ended treaty making in 1871, federal income taxation under the 16th amendment did not happen until 1916, and then followed by the Indian Citizenship Act in 1924, none of which informed Indians of Congressional intent to tax the *Indians not taxed*.

Both *Mille Lacs* and *Dion* are important here because they explain how to properly and more fully examine what/how the Indians understood the agreements at the time of the treaty, and canons of treaty rights construction with any ambiguities in favor of the Indians of the Chippewa Nation[20], and whether there was any Congressional consideration in 1924 to eliminate the Indians' historic, sovereign right of tax immunity argued herein by Appellant, now.

---

[20] Treaty language must also "be interpreted liberally in favor of the Indians, and any ambiguities are to be resolved in their favor." Id. at 200 (citations omitted); *Winters v. United States*, 207 U.S. 564, 576 (1908) (stating that ambiguities should be "resolved from the standpoint of the Indians"). As Chief Justice Marshall explained in *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 552 (1832): "The language used in treaties with the Indians should never be construed to their prejudice. If words be made use of which are susceptible of a more extended meaning than their plain import, as connected with the tenor of the treaty, they should be considered as used only in the latter sense." Id. at 582.

Appellate Case: 23-2923    Page: 24    Date Filed: 01/17/2024 Entry ID: 5354249

**II.     WHETHER THE TAX COURT ERRED IN HOLDING THE FEDERAL TAX LAW CANONS TAXING A TRIBAL MEMBER'S INCOME WITHOUT A CLEAR *TAX EXEMPTION* CONTROLS OVER THE INDIAN LAW CANONS TO DETERMINE HOW THE CHIPPEWAS UNDERSTOOD TREATY RIGHTS?**

**Principles of Treaty and Statutory Interpretation**

"Treaty analysis begins with the text," and treaties "are construed as they would naturally be understood by the Indians." *Herrera v. Wyoming*, 139 S. Ct. 1686, 1701 (2019) (citation omitted). A court is to "look beyond the written words to the larger context that frames the Treaty, including 'the history of the treaty, the negotiations, and practical construction adopted by the parties.'" *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196 (1999) (citation omitted). Treaties are to be interpreted "liberally, resolving uncertainties in favor of the Indians[.]" *United States v. Brown*, 777 F.3d 1025, 1031 (8th Cir. 2015) (citing *Mille Lacs*, 526 U.S. at 200).

Statutes, likewise, are to be "construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit[.]" *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).

Appellate Case: 23-2923     Page: 25     Date Filed: 01/17/2024 Entry ID: 5354249

**Competing Canons of Law**

The Tax Court explained "[t]he canons that require us to strictly construe exemptions from income tax[21], however, are *in tension*[22] with those that govern the interpretation of treaties between the Indian tribes and the United States."[23]  The Tax Court described that

> Bibeau acknowledges that *Capoeman* is precedent, but he flags for us what he considers to be a mistake in the Supreme Court's reasoning, that is, its failure to consider the 1924 Indian Citizenship Act in its legal analysis. The Indian Citizenship Act stated that by granting Indians citizenship, the Act "shall not in any manner impair

---

[21] See *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt. No. 11483-20L, filed May 24, 2023. (Add 01-06, App 001-006, Tax Ct. Rec. V3 p 311). "When it comes to exemptions from tax, however, the Supreme Court has stated "that Indians are citizens and that in ordinary affairs of life, not governed by treaties or remedial legislation, [Indians] are subject to the payment of income taxes as are other citizens." *Capoeman*, 351 U.S. at 6. This means that the absence of tax terms from a treaty does not imply the Indians reserved their right to be free of taxation— instead, it means that an exemption from taxation does not exist. In other words, "tax exemptions are not granted, by implication, to Indians." *Jourdain*, 71 T.C. at 990.

[22] See *Chickasaw Nation v U.S.*, 534 U.S. 84, 101-102, 122 S.Ct. 528, 539 (2001) Justice O'Connor, with whom Justice Souter joins, *dissenting* (commenting on *tension of competing Indian law cases* saying "*Mescalero* also went further, suggesting that because of the taxation principle, the Court would refuse to find such an exemption absent "clear statutory guidance." Id., at 156, 93 S.Ct. 1267. *Mescalero's* formulation is admittedly *in tension with the Court's precedents giving the Indian canon primacy over the taxation principle where statutory language is ambiguous. As Mescalero* was decided on the same day as one of those very precedents, the unanimous decision in *McClanahan v. Arizona Tax Comm'n*, supra, however, it cannot have intended to alter the Court's established practice. (Emphasis added).  Id. Mescalero is relying on tax canon to find Indians taxable.

[23] See *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt. No. 11483-20L, filed May 24, 2023. (Add 01-06, App 001-006, Tax Ct. Rec. V3 p 311).  (Emphasis added).

18

or otherwise affect the right of any Indian to tribal or other property."
Indian Citizenship Act of 1924, ch. 233, 43 Stat. 253, 253. *Bibeau argues that this is evidence that Congress intended to preserve not only the rights that were explicitly granted by treaties, but also those that were implicitly reserved—including the right to be free of taxation.*

*Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt. No. 11483-20L, filed May 24, 2023. (Add 04-05, App 004-005, Tax Ct. Rec. V3 p 311). (Emphasis added). The Tax Court asserts that

> That court has *squarely held* that the Indian Citizenship Act maintained Indians' "pre-existing right to tribal and other property" but "does not create a tax exemption." *Fond du Lac Band of Lake Superior Chippewa v. Frans*, 649 F.3d 849, 851 (8th Cir. 2011). (FN 8[24]) We are therefore constrained from inferring from the silence of the Indian Citizenship Act an exemption for Indians from federal income taxation.

Id. (Emphasis added).(*Pre-existing* supposes that new born Indians don't have

same tribal and property rights?)

    *But compare*, this very same silence of the Indian Citizenship Act and its

proviso has stopped the IRS and tax courts from *inferring* the power to tax Indians

was included in the Indian Citizenship Act of 1924 using (1952, Sec 301) and its

present codification at 8 U.S.C.A. § 1401(b). This is why the *FDL v Frans* Court

---

[24] See FN 8, *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt. No. 11483-20L, filed May 24, 2023. (Add 05, App 005, Tax Ct. Rec. V3 p 311), (Bibeau also argues that the right to be free of taxation can only be abrogated if it was clearly relinquished by treaty or modified by Congress. Since we are constrained to hold there is no such right, we need not discuss what it might take to relinquish it.)

Appellate Case: 23-2923    Page: 27    Date Filed: 01/17/2024 Entry ID: 5354249

ended up with a 2-1 split decision with Judge Murphy in the dissent, the tension in the canons of Indian Law and Tax Law.

There is no clear and precise language showing Congressional intent to federally tax individual Indians in the *1924 Indian Citizenship Act* or the *1952 Nationals and citizens of United States at Birth Act*. Finally, a review of the parties filed briefs in 8th Circuit's *FDL v Frans* reveal no mention of the *Indian Citizenship Act of 1924* or the *1952 Nationals and citizens of United States at Birth Act* which suggests a *sua sponte* panel debate and split-decision instead of briefed and argues by the parties. (Rehearing and Rehearing En Banc Denied Oct. 13, 2011).

Appellant argues what has happened without *clear statutory guidance*, is taxation of Indians by *inference* or *implication* based on citizenship. The federal tax code relies upon the currently 8 U.S.C.A. § 1401(b), *Nationals and citizens of United States at Birth* statute. But in 1952 the *Nationals and citizens of United States at Birth* only codifies the *Indian Citizenship Act* as part of the federal statute. The 1952 Act barely mentions Indians or tax, and does not mention both together.[25]

---

[25] See *1952 Nationals and citizens of United States at Birth Act*, (June 27, 1952, ch. 477, title III, ch. 1, § 301, 66 Stat. 235) The Act is 120 pages in length and relates to immigration, quota system, aliens, entry and exclusion and deportation etc., but not taxing Indians. The term *Indian* appears 8 times, 4 times relating to Sec. 289 *American Indians Born in Canada* and 4 times relating to Sec. 301 (a) The following shall be *nationals and citizens of the United States at birth*: (2) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other

Appellate Case: 23-2923     Page: 28     Date Filed: 01/17/2024 Entry ID: 5354249

**Chippewa Treaty Rights Canons of Construction**

Appellant argues that the controlling canons of construction with regard to Indian treaties and treaty rights have been determined by the United States Supreme Court in *Minnesota v Mille Band of Chippewa Indians*.[26] The 1999 *Mille Lacs* decision reasoning of the canons of construction, logically and necessarily supersedes *Capoeman's* recitation of tax canons requiring an express tax exemption because the Capoeman Court found that "the congressional exemption from tax embodied in Section 6 of the General Allotment Act" and affirmed recognizing that

> [u]nless the proceeds of the timber sale are preserved for respondent, he cannot go forward when declared competent with the necessary chance of economic survival in competition with others. This chance is guaranteed by the tax exemption afforded by the General Allotment Act, and the solemn undertaking in the patent. It is unreasonable to infer that, in enacting the income tax law, Congress intended to limit or undermine the Government's undertaking. To tax respondent under these circumstances would, in the words of the court below, be 'at the least, a sorry breach of faith with these Indians.'[27]

*Capoeman* at 10.

The *Capoeman* courts also did not consider the 1924 Indian Citizenship Act proviso because they presumed a right to tax Indians, but found a tax exemption in

---

aboriginal tribe: *Provided* That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property. *Compare*, the term tax appears 4 times, relating to narcotics and aliens etc. (not Indians).

[26] *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 119 S.Ct. 1187, 143 L.Ed.2d 270,(1999).

[27] *Capoeman* citing *Squire v Capoeman* at 220 F.2d 349 (9th Cir. 1955)

the General Allotment Act.  The *Mille Lacs* Court explained that the canon for

treaty construction begins with

> an examination of the historical record [which] provides insight into
> how the parties to the Treaty understood the terms of the agreement.
> This insight is especially helpful to the extent that it sheds light on
> how the Chippewa signatories to the Treaty understood the agreement
> because we interpret Indian treaties to give effect to the terms as the
> Indians themselves would have understood them.[28]

Here, the Chippewas, as a historic sovereign nation have 44 treaties with the

United States.  The Chippewa were also included as being *Indians not taxed* from

the beginning in the U.S. Const. and through the 14th Amendment.  Chippewa

sovereignty and treaty nation status were clear in the 1826 Treaty when the U.S.

drafters included language that *title to the land has not changed* and *the Chippewas*

*retained jurisdiction*.  The 9th Circuit *Smiskin*[29] Court explained

---

[28] Id. 1201. See *Washington v. Washington State Commercial Passenger Fishing
Vessel Assn.*, 443 U.S. 658, 675-676, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979); *United
States v. Winans*, 198 U.S. 371, 380-381, 25 S.Ct. 662, 49 L.Ed. 1089 (1905).  The
*Winans* Court explained that "[i]n other words, the treaty was not a grant of rights
to the Indians, but a grant of right from them,-a reservation of those not granted."
*Winans* at 381.

[29] *U.S. v. Smiskin*, 487 F.3d 1260 (2007), (Article III of the Treaty provides in
relevant part: And provided, That, if necessary for the public convenience, roads
may be run through the said reservation; and on the other hand, the right of way,
with free access from the same to the nearest public highway, is secured to them; as
also the right, in common with citizens of the United States, to travel upon all
public highways.)  Here Appellant's Chippewa Treaty Rights are not considered if
a tax case addressed a different tribe, a different treaty, and a different right.  See
also *U.S. v Brown* distinguishing Chippewas exclusive treaty rights from treaty
rights to fish in common with the citizens of the territory or United States.

Appellate Case: 23-2923     Page: 30     Date Filed: 01/17/2024 Entry ID: 5354249

> [t]he Supreme Court's jurisprudence makes clear, however, that we
> must interpret a treaty right in light of the particular tribe's
> understanding of that right at the time the treaty was made, addressed
> a different tribe, a different treaty, and a different right.

Id. at 1267.

Taxation was not an issue that needed to be mentioned by the treaty drafters in the 44 treaties with the Chippewa, because the Indian treaties were between two (2) separate sovereigns, and mutual tax immunity was a recognized part of that independent nations' sovereignty. The United States had just declared their independence and fought the Revolutionary War against taxation without representation against the British. "The United States began making treaties with Native Peoples because they were independent nations."[30] Consequently, treaty Indians and tribes had a historic, inherent right to be free of taxation under principals of mutual sovereignty, as well as other unenumerated rights, privileges and immunities.[31]

---

[30] See NATION to NATION Treaties Between the United States and American Indian Nations Smithsonian National Museum of the American Indian https://americanindian.si.edu/nationtonation/ Treaties—solemn agreements between sovereign nations—lie at the heart of the relationship between Indian Nations and the United States. Native Nations made treaties with one another long before Europeans came to the Western Hemisphere. The United States began making treaties with Native Peoples because they were independent nations.

[31] See 1826 Treaty with the Chippewa, Article 3. The Chippewa tribe grant to the government of the United States the right to search for, and carry away, any metals or minerals from any part of their country. *But this grant is not to affect the title of the land, nor the existing jurisdiction over it.*(Emphasis added). (App 073, Ex. 4, Tax Ct. Rec. V3 pp 84-95).

23

The 1826 Treaty with the Chippewa clearly recognizes a separate tribal sovereign that holds title to the land and jurisdiction which related *tax immunity* was not translated by the U.S. treaty drafters, but recorded officially by Congress as *Indians not taxed*, twice. Indians not taxed was expressly provided for in the U.S. Const. before ratification and restated again after the Civil War in the 14th Amd. again ratified by Congress. The phrase *excluding Indians not taxed* was for U.S. apportionment purposes, however, the Indians at the time of treaties understood their political status was not citizens of the United States. Simultaneously, the U.S. was still making treaties with the non-citizen Indians including Chippewa in 1867 creating White Earth Reservation in what is now Minnesota.

The *Mille Lacs* Court explained that

clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty.

*See Brown,* citing *Mille Lacs Band* at 203 citing *United States v. Dion*.

Treaties are the supreme law of the land (U.S. Const) and the Chippewa have 44 treaties with the United States. (See App 055, Ex. 2, Tax Ct Rec. V3 pp 67-73) Table of Treaties Between the United States and the Chippewas From the

24

Beginning to 1871. (1785-1867) Treaties are a grant of rights from the Indians *Winans*.[32]

## Chippewa Treaties inherent, ambiguous and silent reserved rights

Between 1785 and 1867, the Chippewa entered into 44 Treaties with the United States[33], which make no mention of tax, taxing or taxation by the United States or by the Chippewas. The United States wanted to buy vast territories from the Chippewa Indians who were separate sovereigns making treaties[34], ceding (selling) lands, retaining and exercising exclusive rights[35] across those same ceded lands, rivers and lakes, including to commercially[36] hunt, fish, trap and gather over the same territories.

---

[32] Consequently, the burden of proof to show clear statutory guidance for a federal right should shift from Indians not taxed, to the IRS to tax individual Indians, not requiring the tax exemption must be clearly expressed.

[33] See Exhibit 2, Table of Treaties Between the United States and Chippewas Beginning 1785 to 1867.

[34] See *Herrera v Wyoming* 139 S.Ct. 1686 (2019).

[35] *U.S. v Brown*, 2013 WL 6175202 at 5, (2013) original)). As a general matter, "Indians enjoy exclusive treaty rights to hunt and fish on lands reserved to them, unless such rights were clearly relinquished by treaty or have been modified by Congress." *Dion*, 476 U.S. at 738. These fishing rights are held individually by Defendants, as treaty rights can be asserted by individual tribe members. *Id.* at 738 n. 4.

[36] *U.S. v Brown*, 777 F.3d 1025 (2015) 8th Cir. (The United States, also a plaintiff [in Herbst], contended "that the treaty protected rights to hunt, fish, trap and gather wild rice are property rights to be used in whatever fashion the Indians, as owners, desire, whether to eat, clothe, or sell.") (See *Leech Lake Band of Chippewa Indians v. Herbst*, 334 F.Supp. 1001 (D.Minn.1971). See also 1834 Trade and Intercourse Act recognizes exclusive tribal rights in Indian Country and provides legal

The *Herrera* Court explains that

> A treaty is "essentially a contract between two sovereign nations."
> *Fishing Vessel Assn.*, 443 U.S. at 675, 99 S.Ct. 3055. Indian treaties
> "must be interpreted in light of the parties' intentions, with any
> ambiguities resolved in favor of the Indians," *Mille Lacs*, 526 U.S. at
> 206, 119 S.Ct. 1187, and the words of a treaty must be construed " 'in
> the sense in which they would naturally be understood by the Indians,'
> " *Fishing Vessel Assn.*, 443 U.S. at 676, 99 S.Ct. 3055.

Id. See also *Smiskin*, Indian tribes retain "inherent sovereign powers" that they

"enjoy [ ] apart from express provision by treaty or statute."[37] The Tribal sovereign

tax immunity is recognized in the U.S. Const. and 14th Amendment for *Indians not*

*taxed* and apportionment,-- as Indian Tribes were the original occupants, members

of separate sovereign nations with whom the U.S. made treaties, but usually not

subject to generally applicable federal laws, most notably taxation.

Similarly, in *Scalia v. Red Lake Nation Fisheries, Inc.* [38] the 8th Circuit

explained

> Specific Indian rights will not be deemed to have been abrogated or
> limited absent a 'clear and plain' congressional intent." See *EEOC v.*
> *Fond du Lac Heavy Equip. & Constr. Co.*, 986 F.2d 246, 248 (8th Cir.
> 1993), citing *United States v. Dion*, 476 U.S. 734, 738, 106 S.Ct.
> 2216, 90 L.Ed.2d 767 (1986). "[A]reas traditionally left to tribal self-

---

protections for Chippewa commercial activity to hunt, fish, trap and gather, as
before, to acquire, trade and sell.  Chippewa sovereignty.

[37] See  *U.S. v. Smiskin*, 487 F.3d 1260 (2007) cert. denied. Discussing  inherent
tribal sovereignty rights.  See *Strate v. A–1 Contractors*, 520 U.S. 438, 445, 117
S.Ct. 1404, 137 L.Ed.2d 661 (1997); see also *Merrion v. Jicarilla Apache Tribe*,
455 U.S. 130, 137–41, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (discussing tribal
sovereignty).

[38] See *Scalia v. Red Lake Nation Fisheries, Inc.*, 982 F.3d 533 (2020)

Appellate Case: 23-2923     Page: 34     Date Filed: 01/17/2024 Entry ID: 5354249

government, those most often the subject of treaties, have enjoyed an exception from the general rule that congressional enactments, in terms applying to all persons, includes Indians and their property interests."

Id. at 535.

In *U.S. v Brown* the District Court explained that *Chippewa* treaty rights are exclusive from state and federal authority

[t]hus, the inquiry and analysis here is distinct from that of *Sohappy*: the question is whether Congress intended the Lacey Act[39] to apply even to Indians who hold fishing rights that are exclusive and not shared in common with non-Indians. Certainly, the federal government has the authority to exercise jurisdiction to limit tribe members' fishing and hunting, but in order to do so Congress would need to make explicit its intent to abrogate the treaty rights. *Rosebud Sioux Tribe*, 430 U.S. at 594.

Id. distinguishing *Sohappy*[40] from Chippewas treaty rights where "the relevant treaty protected the right of Indians to hunt and fish at all "usual and accustomed places," but "in common with citizens of the Territory."

---

[39] See *Brown* explaining "[t]here is no indication in the text of the Lacey Act that Congress intended to abrogate Chippewa fishing rights under the 1837 Treaty. Rather, the Lacey Act includes a specific disclaimer that: *"[n]othing in this chapter shall be construed as ... repealing, superseding, or modifying any right, privilege, or immunity granted, reserved, or established pursuant to treaty, statute, or executive order pertaining to any Indian tribe, band, or community."* 16 U.S.C. § 3378(c)(2). (Emphasis added).

[40] *Brown* at 6, distinguishing *U.S. v. Sohappy*, 770 F.2d 816, 821 (9th Cir.1985); "Thus, the Lacey Act, applying generally to Indians, applied to the Indians in *Sohappy* because the [1855 Yakima] treaty there did not protect an exclusive right to hunt and fish.  Here, the 1837 [Chippewa] Treaty contains no language requiring that the hunting and fishing rights be shared."

Appellate Case: 23-2923     Page: 35     Date Filed: 01/17/2024 Entry ID: 5354249

The *Brown* Court reminded that

the Supreme Court in *Minnesota v. Mille Lacs Band of Chippewa Indians* held that the 1837 Treaty protected the right of Chippewa Indians to hunt and fish on the Mille Lacs Reservation. 526 U.S. 172, 196–202 (1999). There the State claimed that language in the 1855 Treaty (which created the Leech Lake Reservation) stating that " 'Indians do further fully and entirely relinquish and convey to the United States, any and all right, title, and interest, of whatsoever nature the same may be, which they may now have in, and to any other lands in the Territory of Minnesota or elsewhere,' " terminated any usufructuary rights the Chippewa may have had. *Mille Lacs Band*, 526 U.S. at 195 (quoting 10 Stat. 1166). *But the Supreme Court found otherwise, observing that the treaty is "devoid of any language expressly mentioning—much less abrogating—usufructuary rights."* Id. The Supreme Court also noted that the Senate chairman of the Committee on Indian Affairs at the time the 1855 Treaty was signed stated that the treaties would reserve to the Chippewa "those rights which are secured by former treaties," and that statements by a Chief of one band party to the treaty emphasized that the purpose of the treaty was the transfer of land, suggesting that "the Chippewa did not understand the proposed Treaty to abrogate their usufructuary rights as guaranteed by other treaties." Id. at 197–98 (internal quotations and citations omitted). The Court is persuaded, and the parties do not dispute, that the usufructuary rights named in the 1837 Treaty apply to the Leech Lake Band on the Leech Lake Reservation.

Id. at 2.(Emphasis added).

The 8ᵗʰ Circuit *Brown* Court explained how silence in a treaty still has meanings within other treaties and treaty negotiations pointing out that

In contrast to the 1837 negotiations, there is no record of a discussion of usufructuary rights, and the treaty is silent on that subject. See 1855 Treaty Journal; 1855 Treaty. Reservations within the ceded territory were negotiated.  Flatmouth requested a reservation "at Lake Winn[ibigoshish], Cass Lake, and Leech Lake" and the treaty thus established the Leech Lake Reservation. 1855 Treaty Journal at 29; 1855 Treaty, art. 2.

Id. at 1028-1029.

There was no understanding by the Chippewa Indians during treaty making times that Indians were discussing, negotiating or expecting to be subject to future taxation[41] by the other party to the treaties, the United States.

**End of Treaty Making by Congress.**

In 1871, Congress ended further treaty making with the tribes.   The 1871 Act was amended in 1988 and includes a property right tax protection on fish  by states whereby the treaties will be

> [. . . ] construed to prohibit (in addition to any other prohibition) the imposition under any law of a State or political subdivision thereof of any tax on any income derived from the exercise of rights to fish secured by such treaty[ . . . .]

Id.

The last Chippewa Treaty with the U.S. was 1867, which is 50 years before citizenship, consequently Tribes, Indians and the Chippewa with 44 Treaties would never have understood they could be taxed later on earning their modest livings, explaining why they did not have an express, tax exemption in any of the 44 treaties.  The power to tax by the federal government was not permanently successful until 1916, when sufficient states ratified the 16th Amendment, which

---

[41] See U.S. Const Article 1, Section 8, Clause 3 and 14th Amd.  Describing the non-citizen, political status description as *Indians not taxed*.

clear and precise language declares that "[t]he Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." For the law to apply to Indians "from whatever source derived" should include the words "including Indians now taxed" added. To prevent a 5th Amd. and unjust taking must include Congressional Indian commerce clause due process to the affected tribes and tribal members, including notice and opportunity to be heard by the Senate and House Indian Affairs Committees.

The same goes for the 1924 Indian Citizenship Act. If Congress intended to tax Indians as part of that Act, the proviso would have said " Therefore, the Indians are now subject to federal taxation like any other citizen." But that is not what Congress said. Congress did hold hearings by the House Indian Affairs and Senate Indian Affairs but for Citizenship, not for the purpose of direct, individual, federal taxation of Indians.[42]

**Strictly construed tax exemptions are unreasonable and erroneous standard**

Here, the present Tax Court decision explains that

[w]hile exemptions from income taxation are to be strictly construed, see, e.g., *McCamant v. Commissioner*, 32 T.C. 824, 834 (1959), Indian treaties "are to be construed, so far as possible, in the sense in which

---

[42] See FN 10 infra, *Challenging American Boundaries: Indigenous People and the "Gift" of U.S. Citizenship*, Kevin Bruyneel, (the passing of the 1924 shows that the Act was adopted so fast, the Chippewa did not know until after the bill was signed into law.)

the Indians understood them," *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 432 (1943). This means that "[t]he construction, instead of being strict, is liberal; doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of [the Indians]." *Choate v. Trapp*, 224 U.S. 665, 675 (1912).

This canon telling us to construe Indian treaties favorably to Indians does not, however, "create favorable rules." *Jourdain v. Commissioner*, 71 T.C. 980, 990 (1979). And in the case of exemptions from taxation, the Supreme Court has held that "to be valid, exemptions to tax laws should be clearly expressed." *Capoeman*, 351 U.S. at 6 (emphasis added).

See *Frank W. Bibeau v Commissioner of Internal Revenue*, T.C. Memo-66, Dkt. No. 11483-20L, filed May 24, 2023.[43] (Add 02-03, App 002-003, Tax Ct. Rec. V3 pp 307-313). Here the IRS and Tax Court decision-making, with regard to Indian treaties, begins and ends with *Capoeman*.

### *Capoeman* is the wrong precedent without Indian law canons analysis

A criticism of *Capoeman* is that *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 432 (1943) and *Choate v. Trapp*, 224 U.S. 665, 675 (1912) are not even mentioned in the *Capoeman* tax court decision, Ninth Circuit decision or by the Supreme Court.[44] Both Indian tax law cases are mentioned in the Appellant's

---

[43] See also *2017 Tax Affidavit* of Appellant, item 4, "That I reside within the exterior boundaries of the Leech Lake Reservation, one of six MCT reservations, and reside on land held in trust by the United States of America for the Minnesota Chippewa Tribe, where I keep my legal office." (*Stipulation of Facts*, App 241, Item 11, Tax Ct. Rec. V2 p 37).

[44] The tax issue in Capoeman was resolved in favor Capoeman under the General Allotment Act of 1887.

tax court decision herein appealed, but no mention of the 1999 Supreme Court

*Mille Lacs Band* decision or modern canons of construction treaty analysis.  The

Capoeman's appeal brief included *Choate v Trapp*[45] arguments to that Supreme

Court explaining

> [f]or the right of exemption is a property right; it is protected by the Constitution. *Choate v. Trapp*, 224 U.S. 665, 673-4; *Carpenter v. Shaw*, 280 U.S. 363, 367 (1930) The general rule refusing to presume tax exemptions and construing them strictly has no place in construing these statutes. *Carpenter v. Shaw*, 280 U.S. 363, 366; *Choate v. Trapp*, 224 U.S. 665, 675. The restrictions [on trust property] constitute "an express trust for a valuable consideration to the faithful performance of which the United States was legally committed."
>
> * * *
>
> How much more must it be true that there is no repeal by implication, that there is no repudiation of the Government's trust, when to construe the [tax] statute as implying such a repeal or repudiation would raise the serious constitutional question of a taking of the property right (*Choate v. Trapp*, 224 U.S. 665, 673-4 (1912); *Carpenter v. Shaw*, 280 U.S. 363, 367 (1930)) of respondent husband without just compensation, contrary to the 5th Amendment.

Id.  A historic, tax immunity, was understood by the *Indians not taxed*.

**Tax immunity of Indians is property right protected by the 5ᵗʰ Amendment requiring Congressional due process to abrogate. Trust responsibility?**

As explained by the *Mille Lacs* decision

Congress may abrogate Indian treaty rights, but it must clearly express its intent to do so. *United States v. Dion*, 476 U.S. 734, 738-740, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986); see also *Washington v.*

---

[45] *See* Capoeman's Appellate *Brief for Respondent's* to the Supreme Court of the United States, 1955 WL 72939, pp. 12-15.

32

> *Washington State Commercial Passenger Fishing Vessel Assn.*, 443
> U.S., at 690, 99 S.Ct. 3055; *Menominee Tribe v. United States*, 391
> U.S. 404, 413, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968). There must be
> "clear evidence that Congress actually considered the conflict between
> its intended action on the one hand and Indian treaty rights on the
> other, and chose to resolve that conflict by abrogating the treaty."
> *United States v. Dion*, supra, at 740, 106 S.Ct. 2216.

Id. 526 U.S. 172, 203, 119 S.Ct. 1187, 1204.

Taxing Indians without clear and precise language and relying instead on

inference and implication is counterintuitive to the U.S. trust responsibility.[46]

There is a real financial impairment to Indians' property rights by *unjustly taking*

the tax immunity that necessarily requires having due process hearings where the

---

[46]See Petitioner's Reply Memorandum of Law In Support of Not Federally
Taxing Indians' Income, App 276-277, Tax Ct. Rec. V3 p 304-305, FN 15,
35 Op. Atty. Gen. 1 (1925). And cf. id., 107 (1926). *Squire* did not examine
the 1924 Indian Citizenship Act as part of the legal analysis. Most
interesting is

> [t]he first opinion of an Attorney General touching on this question
> seemed to construe the language of the amendment to Section 6 as
> exempting from the income tax income derived from restricted
> allotments. And even without such a clear statutory basis for
> exemption, a later Attorney General advised that he was –

[U]nable, by implication, to impute to Congress under the broad language of our
Internal Revenue Acts an intent to impose a tax for the benefit of the Federal
Government on income derived from the restricted property of these wards of the
nation -- property the management and control of which rests largely in the hands
of officers of the Government charged by law with the responsibility and duty of
protecting the interests and welfare of these dependent people. In other words, it is
not lightly to be assumed that Congress intended to tax the ward for the benefit of
the guardian.

Appellate Case: 23-2923    Page: 41    Date Filed: 01/17/2024 Entry ID: 5354249

House and Senate considers whether to take the historic, sovereign tax immunity, property right away and where Congress provides compensation for that taking.

Instead, Congress avoided complicated property rights hearings during committee proceedings to grant citizenship to Indians, especially including any ideas of taxation. This would be the Congressional reasoning behind the clear and precise, pre-emptive proviso language "Provided, That the granting of citizenship under this subsection *shall not in any manner impair or otherwise affect the right of such person to tribal or other property*;"[47]

Property other than Tribal would be non-Tribal real estate and personal property like automobile, stocks, bonds, cash and income.[48] The Congressional proviso has been in place for 100 years, even if an ambiguous clause requires consideration by this Court in light of the missing Indian property rights analysis or its federal income taxation whereby the Tax Code is relying on *inference* and

---

[47] See the 1924 Indian Citizenship Act, 1952 act relating to immigration, naturalization, and nationality; and for other purposes. Sec. 301; and presently 8 U.S.C.A. 1401(b).

[48] See Petitioner's Initial Memorandum of Law in Support of not Federally Taxing Indians' Income App 279-303, Tax Ct Rec. V3 p 10-11, citing https://legal-dictionary.thefreedictionary.com/Property+(law) Personal property, also referred to as movable property, is anything other than land that can be the subject of ownership, including stocks, money, notes, Patents, and copyrights, as well as intangible property. Real property is land and ordinarily anything erected on, growing on, or affixed to it, including buildings and crops. The term is also used to declare any rights that issue from the ownership of land.

34

*implications* is an *unjust taking* under the Fifth Amendment.[49]  The fair

compensation for loss of a historic sovereign, tax immunity would be greater than

the applied tax annually---to be fair.

**The same *tension* in the canons of construction still exist today, and split the 8th Circuit in *FDL v Frans*.**

The *FDL v Frans* majority tells Judge Murphy the Indian Citizenship Act

proviso does not create a tax exemption because

> [i]n becoming United States and Minnesota citizens, Band members kept their pre-existing right to tribal and other property. The proviso does not create a tax exemption.  *Because citizenship provides a constitutional nexus*, Minnesota's taxation complies with due process.

Id. at 851-852.  (Emphasis added).

The majority argues that

> [t]he facts here lie between *McClanahan*, involving only on-reservation activity, and *Mescalero Apache Tribe*, involving operation of a ski resort within the taxing state but off the reservation. See *McClanahan*, 411 U.S. at 165–66, 93 S.Ct. 1257; *Mescalero Apache Tribe*, 411 U.S. at 146, 93 S.Ct. 1267. *McClanahan* limits itself, referring to *Mescalero Apache Tribe* as governing taxation of off-reservation activity:
> Nor, finally, is this a case where the State seeks to reach activity undertaken by reservation Indians on nonreservation lands. See, e.g., *Mescalero Apache Tribe v. Jones*, ante, p. 145 [93 S.Ct. 1267]. Rather, this case involves the narrow question whether the State may tax a reservation Indian for income earned exclusively on the reservation.

---

[49] *Fifth* Amendment requires that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property" and requires the government to compensate citizens when it takes private property for public use.

> *McClanahan*, 411 U.S. at 168, 93 S.Ct. 1257. See also *Okla. Tax*
> *Comm'n v. Chickasaw Nation*, 515 U.S. 450, 464, 115 S.Ct. 2214, 132
> L.Ed.2d 400 (1995) ("the rule that Indians and Indian tribes are
> generally immune from state taxation, *McClanahan v. Arizona Tax*
> *Comm'n*, ... does not operate outside Indian country"), citing *Okla. Tax*
> *Comm'n v. Sac & Fox Nation*, 508 U.S. 114, 123–26, 113 S.Ct. 1985,
> 124 L.Ed.2d 30 (1993).

Id. at 852.

Determining what the Chippewa understood at the time of the 44 treaties cannot be controlled by cases that decide the rights of the Chickasaw, Mescalero Apache Tribe, Sac & Fox, nor the Arizona and Oklahoma state tax commissions. The Supreme Court's jurisprudence makes clear, however, that we must interpret a treaty right in light of the particular tribe's understanding of that right at the time the treaty was made, addressed a different tribe, a different treaty, and a different right.[50]

## CONCLUSION

Indian Law canons, not Tax law canons, control this case. Federal income taxation of Indians is an unjust taking under the 5th Amd. The unjust taking is an abrogation of a historic treaty rights whereby taxation has been assumed through implication and inference, based on the first half the language in the 1924 Indian Citizenship Act. Instead to tax Indians generally requires a Congressional Act with

---

[50] *U.S. v. Smiskin*, 487 F.3d 1260, 1267 (2007)

the clear and precise language actually authorizing federal income taxation of all Indians generally. Here, Congress was not creating a tax immunity in the 1924 Indian Citizenship Act but instead trying to protect a variety of historic, tribal sovereign property rights, which mutual tax immunity is a recognized attribute and necessary part of treaty making between sovereign nations.

Appellant asks this Court to reverse the ruling of the Tax Court below, and find that Congress never authorized the federal taxation of the income of Indians; or, in the alternative, to find that federal taxing authority cannot reach income derived from specific, treaty-protected activities.

Respectfully submitted:

Dated: January 16, 2024

/s/ Frank Bibeau
Frank Bibeau (MN #0306460)
909 NW Ninth Street
Grand Rapids, MN 55744
(218) 760-1258
frankbibeau@gmail.com

Appellate Case: 23-2923    Page: 45    Date Filed: 01/17/2024 Entry ID: 5354249

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P.

    32(a)(7)(A), and it also complies with Fed. R. App. P. 32(a)(7)(B) because

    the brief contains 11,616 words, excluding the parts of the brief exempted by

    Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

    this brief has been prepared in a proportionally spaced typeface using

    Microsoft Office Word 2016, Times New Roman, Font Size 14.

3.  The undersigned also certifies that this brief has been scanned for viruses

    and is virus-free.


Dated: January 16, 2024                         /s/ Frank Bibeau

38

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Frank Bibeau*

Appellate Case: 23-2923    Page: 47    Date Filed: 01/17/2024 Entry ID: 5354249