# No. 23-2923

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

FRANK W. BIBEAU,

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Appellee

ON APPEAL FROM THE DECISION OF THE
UNITED STATES TAX COURT

BRIEF FOR THE APPELLEE

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

ELLEN PAGE DELSOLE      **(202) 514-8128**
KATHLEEN E. LYON        **(202) 307-6370**
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

# SUMMARY OF THE CASE AND WAIVER OF ORAL ARGUMENT

This is an appeal from the Tax Court's decision upholding the determination of the IRS Independent Office of Appeals to sustain a proposed levy against Frank W. Bibeau, to collect unpaid federal self-employment taxes on income that he reported on his 2016 and 2017 federal income tax returns. Bibeau, an attorney and enrolled member of the Minnesota Chippewa Tribe, argued that income he received for providing legal services to two Bands of the Tribe and to a native-led organization was exempt from federal taxes. After a collection-due-process hearing under Internal Revenue Code § 6330, 26 U.S.C., the Office of Appeals issued a notice of determination sustaining the proposed levy. Bibeau challenged that determination in Tax Court. The court sustained the notice of determination, recognizing that the Supreme Court has held that Indians are subject to income tax absent an express exemption, and finding no exemption applies here. Bibeau now appeals. Pursuant to Eighth Circuit Rule 28A(i)(1), we respectfully submit that oral argument is unnecessary because the facts and law are fully discussed in the briefs. If this Court should decide to hear oral argument, we submit that 10 minutes per side would be sufficient.

Appellate Case: 23-2923   Page: 2   Date Filed: 03/08/2024 Entry ID: 5371649

# TABLE OF CONTENTS

**Page**

Summary of the case and waiver of oral argument ...................................i

Table of contents................................................................................ii

Table of authorities .........................................................................iv

Jurisdictional statement ................................................................... 1

Statement of the issue...................................................................... 3

Statement of the case ....................................................................... 4

    A.    The relevant facts........................................................ 6

    B.    Proceedings in the Tax Court ................................... 13

        1.    The petition and the parties' positions ........................13

        2.    The Tax Court's opinion ................................ 17

Summary of argument ........................................................21

Argument:

    The Tax Court correctly held that Bibeau is subject to federal income tax on his self-employment income earned as an attorney in 2016 and 2017 ............................................24

        Standard of review ............................................24

    A.    Individual Indians are subject to federal taxes unless specifically exempted by a treaty or act of Congress dealing with Indian affairs ....................................25

    B.    Bibeau fails to identify any statute or treaty provision that would exempt his attorney income from federal taxation..................................................28

        1.    Bibeau fails to identify a statute providing an exemption here............................................29

Appellate Case: 23-2923    Page: 3    Date Filed: 03/08/2024 Entry ID: 5371649

a. No Internal Revenue Code provision exempts Bibeau's income from tax ....................................29

b. The Indian Citizenship Act of 1924 does not create an exemption from federal income tax for Indians............................................................30

2. The 1837 Treaty does not contain a federal tax exemption for Bibeau's income as an attorney............33

a. The relevant rules of treaty construction ...........33

b. The 1837 Treaty cannot reasonably be construed as creating a federal tax exemption for Bibeau's self-employment income in 2016 and 2017 ....................................34

c. Bibeau's remaining arguments are without merit ...........................................................45

Conclusion........................................................................49
Certificate of compliance.................................................50
Certificate of service ......................................................51

Appellate Case: 23-2923    Page: 4    Date Filed: 03/08/2024 Entry ID: 5371649

# TABLE OF AUTHORITIES

**Cases:**                                                         **Page(s)**

*Allen v. Commissioner*,
T.C. Memo 2005-118, 2005 WL 1208509
(May 23, 2005) ....................................................................... 48

*Allen v. Commissioner*,
T.C. Memo. 2006-11, 2006 WL 177408
(Jan. 25, 2006), *affirmed*, 204 F. App'x 564
(7th Cir. 2006) ...................................................................... 44

*Avula v. Commissioner*,
221 F. App'x 468 (8th Cir. 2007).......................................... 24

*Bibeau v. Commissioner*,
T.C. Memo. 2023-66,
2023 WL 3619588 (May 24, 2023) .......................................... 2

*Chase v. Commissioner*,
T.C. Memo. 1990-164, 1990 WL 33360
(March 28, 1990), *affirmed*, 926 F.2d 737
(8th Cir. 1991) ...................................................................... 26

*Chavero-Linares v. Smith*,
782 F.3d 1038 (8th Cir. 2015) ........................................ 13, 29

*Chickasaw Nation v. United States*,
208 F.3d 871 (10th Cir. 2000), *affirmed*,
534 U.S. 84 (2001) ........................................................... 34, 45

*Choctaw Nation of Indians v. United States*,
318 U.S. 423 (1943) ......................................................... 37, 40

*Choteau v. Burnet*,
283 U.S. 691 (1931) ............................................ 26, 27, 30, 33

*Clay v. Commissioner*,
990 F.3d 1296 (11th Cir. 2021) .............................................. 27

*Cnty. of Oneida v. Oneida Indian Nation*,
470 U.S. 226 (1985) ............................................................... 33

*Dillon v. United States*,
792 F.2d 849 (9th Cir. 1986) ................................................. 47

*Doxtator v. Commissioner*,
T.C. Memo. 2005-113, 2005 WL 1163978
(May 18, 2005) ...................................................................... 44

Appellate Case: 23-2923      Page: 5      Date Filed: 03/08/2024 Entry ID: 5371649

*Federal Power Commission v. Tuscarora Indian Nation*,
  362 U.S. 99 (1960) ............................................................25-26
*Fond du Lac Band of Lake Superior Chippewa v. Frans*,
  649 F.3d 849 (8th Cir. 2011) ..............................3, 20, 22, 31-32
*Giamelli v. Commissioner*,
  129 T.C. 107 (2007) .................................................................13
*Gillum v. Commissioner*,
  676 F.3d 633 (8th Cir. 2012) .................................................12
*Holt v. Commissioner*,
  364 F.2d 38 (8th Cir. 1966) .................................27, 29, 34, 42
*Hoptowit v. Commissioner*,
  78 T.C. 137 (1982), *affirmed*,
  709 F.2d 564 (9th Cir. 1983) .................................................43
*John C. Hom & Assocs. v. Commissioner*,
  140 T.C. 210 (2013) .................................................................14
*Jourdain v. Commissioner*,
  617 F.2d 507 (8th Cir. 1980) ...............3, 27, 30, 33, 37, 43, 47
*Jourdain v. Commissioner*,
  71 T.C. 980 (1979), *affirmed*, 617 F.2d 507
  (8th Cir. 1980) .................................................................28, 39
*Lac Courte Oreilles Band of Lake Superior Chippewa
  Indians v. State of Wis.*,
  653 F. Supp. 1420 (W.D. Wis. 1987) .....................................41
*LaFontaine v. Commissioner*,
  533 F.2d 382 (8th Cir. 1976) .................................................47
*Lazore v. Commissioner*,
  11 F.3d 1180 (3d Cir. 1993) ............................................33, 47
*Linden v. CNH Am., LLC*,
  673 F.3d 829 (8th Cir. 2012) .................................................29
*Manypenny v. Commissioner*,
  T.C. Memo 1992-260, 1992 WL 91506 (May 6, 1992),
  *affirmed*, 995 F.2d 227 (8th Cir. 1992) .................................48
*Martin v. Commissioner*,
  149 T.C. 293 (2017) .................................................................26
*Menominee Tribe of Indians v. United States*,
  391 U.S. 404 (1968) .................................................................43

Appellate Case: 23-2923    Page: 6    Date Filed: 03/08/2024 Entry ID: 5371649

**Cases (cont'd):**                                                    **Page(s)**

*Mescalero Apache Tribe v. Jones,*
    411 U.S. 145 (1973) ..................................................28, 33, 39

*Minnesota v. Mille Lacs Band of Chippewa Indians,*
    526 U.S. 172 (1999) ..................................................6, 40-42, 46

*Montgomery v. Commissioner,*
    122 T.C. 1 (2004) ........................................................... 12

*Perkins v. Commissioner,*
    970 F.3d 148 (2d Cir. 2020) .............................................27-28

*Estate of Peterson v. Commissioner,*
    90 T.C. 249 (1988) ............................................................ 39

*Robinette v. Commissioner,*
    439 F.3d 455 (8th Cir. 2006) ................................................24

*Sego v. Commissioner,*
    114 T.C. 604 (2000) ...........................................................24

*Squire v. Capoeman,*
    351 U.S. 1 (1956) ..............................................3, 17-18, 27, 30,
                                  32, 33, 36-37, 46,47

*Steward Mach. Co. v. Davis,*
    301 U.S. 548 (1937) ...........................................................25

*Stuart v. Commissioner,*
    841 F.3d 777 (8th Cir. 2016) ................................................25

*Superintendent of Five Civilized Tribes v. Commissioner,*
    295 U.S. 418 (1935) ..................................................26, 27, 33

*Thompson v. Commissioner,*
    140 T.C. 173 (2013) .......................................................12, 47

*United States v. Anderson,*
    625 F.2d 910 (9th Cir. 1980) ................................................45

*United States v. Brown,*
    777 F.3d 1025 (8th Cir. 2015).... 3, 14, 18-19, 23, 35-36, 39-41

*United States v. Dion,*
    476 U.S. 734 (1986) ...................................................42-43, 46

*United States v. King Mountain Tobacco Co., Inc.,*
    899 F.3d 954 (9th Cir. 2018) ................................................28

*United States v. Lara,*
    541 U.S. 193 (2004) ...........................................................25

Appellate Case: 23-2923    Page: 7    Date Filed: 03/08/2024 Entry ID: 5371649

**Cases (cont'd):**                                    **Page(s)**

*United States v. Meyer,*
    914 F.3d 592 (8th Cir. 2019) .................................... 9
*United States v. Willie,*
    941 F.2d 1384 (10th Cir. 1991) ............................. 47
*United States v. Winans,*
    198 U.S. 371 (1905) ........................................... 46
*Washington v. Washington State Com. Passenger*
    *Fishing Vessel Ass'n,*
    443 U.S. 658 (1979) ........................................... 46
*White Mountain Apache Tribe v. Bracker,*
    448 U.S. 136 (1980) ...................................... 25, 45

## Statutes:

16 U.S.C.:

    § 3372(a)(1) ..................................................... 36

Indian Citizenship Act of 1924, Pub. L. No. 68-175,
    ch. 233, 43 Stat. 253, 8 U.S.C. § 1401(b) .............. 4, 14-15, 20,
                                                         22, 25, 30-32

Internal Revenue Code (26 U.S.C.):

    § 1          ...................................... 5, 7-8, 26, 30, 47
    § 61         ...................................................... 7
    § 61(a)      ............................................... 26, 47
    § 63         ...................................................... 7
    § 101-140 ................................................... 26
    § 161        ...................................................... 7
    § 894(a)(1) .................................................. 27
    § 1401       .......................................... 5, 7, 9, 26
    § 1401(a)    .................................................. 28
    § 1402 ........................................................ 26
    § 1402(a)    ................................................... 7
    § 1402(a)(4) ................................................. 9

Appellate Case: 23-2923    Page: 8    Date Filed: 03/08/2024 Entry ID: 5371649

**Statutes (cont'd):**                                                   **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 6320 ............................................................................... 14
§ 6320(c) ........................................................................... 14
§ 6330 ........................................................................... 1, 14
§ 6330(a) ........................................................................... 11
§ 6330(b) ........................................................................... 11
§ 6330(c)(1) ....................................................................... 13
§ 6330(c)(2) ....................................................................... 13
§ 6330(c)(2)(A) .................................................................. 11
§ 6330(c)(2)(A)(iii) ............................................................ 13
§ 6330(c)(2)(B) .................................................................. 11
§ 6330(c)(3) ....................................................................... 12
§ 6330(c)(3)(A) .................................................................. 13
§ 6330(c)(3)(B) .................................................................. 13
§ 6330(c)(3)(C) .................................................................. 14
§ 6330(d)(1) .................................................................... 2, 12
§ 6651(a)(1) ....................................................................... 10
§ 6651(a)(2) ....................................................................... 10
§ 6654 ............................................................................. 9-10
§ 7482(a)(1) .................................................................... 3, 25
§ 7483 ................................................................................. 3
§ 7502(a) ............................................................................. 2
§ 7873 ............................................................................... 36

**Regulations:**

Treasury Regulations (26 C.F.R.):

§ 1.1401-1(a) ................................................................... 7, 26
§ 301.6330-1(e)(3) ............................................................ 12

**Miscelleneous:**

89 Fed. Reg. 944 ................................................................. 6

Appellate Case: 23-2923     Page: 9     Date Filed: 03/08/2024 Entry ID: 5371649

**Miscelleneous (cont'd):**                                    **Page(s)**

Federal Rules of Appellate Procedure:

    Rule 13(a)................................................................3

Tax Court R.:

    Rule 142(a)......................................................12, 47
    Rule 122 ..............................................................6

Treaty with the Chippewa, July 29, 1837, 7 Stat. 536 .........4-6, 15, 17, 18, 22-23, 33-43, 47

U.S. Const., art. 1, § 2, cl. 3.............................................46

U.S. Const., art. 1, § 8, cl. 3.............................................25

Appellate Case: 23-2923   Page: 10   Date Filed: 03/08/2024 Entry ID: 5371649

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

———————————

### No. 23-2923

### FRANK W. BIBEAU,

### Appellant

### v.

### COMMISSIONER OF INTERNAL REVENUE,

### Appellee

———————————

## ON APPEAL FROM THE DECISION OF THE
## UNITED STATES TAX COURT

———————————

## BRIEF FOR THE APPELLEE

———————————

## JURISDICTIONAL STATEMENT

On July 21, 2020, the Internal Revenue Service's Independent
Office of Appeals (Office of Appeals), after a collection-due-process
hearing, issued appellant Frank W. Bibeau and his wife a notice of
determination under Internal Revenue Code ("I.R.C." or "the Code")
§ 6330, 26 U.S.C., sustaining a notice of intent to levy to collect Bibeau's
unpaid liabilities for federal self-employment taxes on income that he

-1-

earned in his law practice in 2016 and 2017. (Aplee. Apndx. 44-47; A.R. Vol. 2, at 43-46.) [1]

Bibeau timely filed a petition challenging the notice of determination in Tax Court by mailing his petition on August 20, 2021, the 30th day after the notice of determination was mailed. (Aplee. Apndx. 30; A.R. Vol 1, at 25.) I.R.C. §§ 6330(d)(1), 7502(a) (treating postmark date as date of filing). The Tax Court had jurisdiction over the timely petition under I.R.C. § 6330(d)(1).

On May 24, 2023, the Tax Court (Judge Mark V. Holmes) filed a memorandum opinion, unofficially reported at T.C. Memo. 2023-66, 2023 WL 3619588, sustaining the notice of determination. (App. 1-6; A.R. Vol. 3, at 307-312.) On May 25, 2023, the Tax Court entered a

---

[1] "App." references are to the appellant's appendix. "Aplee. Apndx." references are to the appellee's appendix. "A.R." cites are to the Tax Court record. "Br." references are to the appellant's opening brief.

Because Bibeau and his wife filed joint federal income tax returns for 2016 and 2017, the IRS issued the notice of intent to levy to both spouses, and the Office of Appeals did the same when it issued the notice of determination. (Aplee. Apndx. 44, 59; A.R. Vol. 2, at 43, 102). Bibeau's wife did not sign the petition filed in Tax Court challenging the notice of determination and therefore is not a party to this case. (Aplee. Apndx. 7; A.R. Vol. 1, at 2.) Accordingly, we refer to her only for context purposes.

Appellate Case: 23-2923    Page: 12    Date Filed: 03/08/2024 Entry ID: 5371649

final decision consistent with its opinion.  (App. 7; A.R. Vol. 3, at 313.)

On August 21, 2023, within 90 days after entry of the decision, the Tax

Court docketed Bibeau's notice of appeal.  (Aplee. Apndx. 124; A.R. Vol.

3, at 316.)  The appeal is timely pursuant to I.R.C. § 7483 and Fed. R.

App. P. 13(a).  This Court has jurisdiction under I.R.C. § 7482(a)(1).

## STATEMENT OF THE ISSUE

Whether the Tax Court correctly held that Bibeau was liable for
self-employment taxes on his income from legal services provided to
Bands of the Chippewa Tribe and a native-led nonprofit corporation in
2016 and 2017, because no express exemption from federal taxation
applies.

The most apposite authorities are:

*Fond du Lac Band of Lake Superior Chippewa v. Frans*, 649 F.3d
849 (8th Cir. 2011)

*Jourdain v. Commissioner*, 617 F.2d 507 (8th Cir. 1980)

*Squire v. Capoeman*, 351 U.S. 1 (1956)

*United States v. Brown*, 777 F.3d 1025 (8th Cir. 2015)

Appellate Case: 23-2923   Page: 13   Date Filed: 03/08/2024 Entry ID: 5371649

Indian Citizenship Act of 1924, Pub. L. No. 68-175, ch. 233, 43 Stat. 253, *current version codified at* 8 U.S.C. § 1401(b) [2]

Treaty with the Chippewa, July 29, 1837, 7 Stat. 536

## STATEMENT OF THE CASE

Bibeau filed this case in the Tax Court challenging the IRS Independent Office of Appeals' notice of determination sustaining a proposed levy to collect federal self-employment taxes on his income from his law practice in 2016 and 2017. Bibeau, an enrolled member of the Minnesota Chippewa Tribe, claimed that his income earned in those tax years as an attorney providing legal services to two Bands of the Tribe and to a native-led non-profit organization, and reported on his

---

[2] The original and current statutes are similar, but not identical. The Indian Citizenship Act of 1924, ch. 233, 43 Stat. 253, provides, in pertinent part: "That all non-citizen Indians born within the territorial limits of the United States be, and they are hereby, declared to be citizens of the United States: *Provided*, That the granting of such citizenship shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property."

Section 1401(b), 8 U.S.C., provides: "The following shall be nationals and citizens of the United States at birth: * * * (b) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe: *Provided*, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property; * * *."

Appellate Case: 23-2923   Page: 14   Date Filed: 03/08/2024 Entry ID: 5371649

returns, was exempt from federal taxation. He argued that Indians generally are exempt from federal taxes or, alternatively, that the 1837 Treaty with the Chippewa excepted his income from these legal services from federal taxes. Even without such an exception, net operating losses shielded Bibeau's law practice income from the federal income tax imposed under I.R.C. § 1. But those losses did not shield his income from the self-employment income taxes imposed under I.R.C. § 1401. Accordingly, this case involves only whether Bibeau is liable for the tax on self-employment income under I.R.C. § 1401.

The Tax Court issued an opinion and decision sustaining the notice of determination. It correctly held that Indians,[3] like all Americans, are subject to the federal tax laws unless a law or treaty specifically provides otherwise. And the court held that the 1837 Treaty on which Bibeau relied did not contain a specific exemption from federal taxation, as required under this Court's and the Supreme Court's precedent for income to be exempt from federal taxes. Bibeau now appeals.

---

[3] As did the Tax Court (App. 2 n.4; A.R. Vol. 3, at 308 n.4), we use the traditional terms "Indian" and "tribe" for consistency with the legal-historical past.

Appellate Case: 23-2923    Page: 15    Date Filed: 03/08/2024 Entry ID: 5371649

## A. The relevant facts[4]

Between 1785 and 1867, the Chippewa Indians entered 44 treaties with the United States. (App. 55-60; A.R. Vol. 3, at 68-73 (index of treaties).) As relevant here, in 1837, the United States entered into a treaty with several Bands of Chippewa Indians in which the Indians ceded land in present-day Wisconsin and Minnesota to the United States. (App. 92-98; A.R. Vol. 3, at 105-111.) 1837 Treaty with the Chippewa, July 29, 1837, 7 Stat. 536 (the "1837 Treaty"). In return, the United States (*inter alia*) guaranteed the Chippewa Indians "[t]he privilege of hunting, fishing, and gathering the wild rice, upon the lands, the rivers and the lakes included in the territory ceded" to the United States. (App. 94, art. 5; A.R. Vol. 3, at 107 art. 5); *see Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 175-76 (1999).

Bibeau is an enrolled member of the Minnesota Chippewa Tribe, which is a federally-recognized Indian Tribe. 89 Fed. Reg. 944. (Aplee. Apndx. 37-38 ¶¶ 9-10; A.R. Vol. 2, at 36-37 ¶¶ 9-10.) The Minnesota Chippewa Tribe includes, as relevant here, the Leech Lake Band of

---

[4] The facts were stipulated pursuant to Tax Court Rule 122. (Aplee. Apndx. 34-43, 93; A.R. Vol. 2, at 33-42, 249.)

Appellate Case: 23-2923   Page: 16   Date Filed: 03/08/2024 Entry ID: 5371649

Ojibwe and the Mille Lacs Band of Ojibwe (collectively, "the Bands"). (Aplee. Apndx. 38 ¶ 10; A.R. Vol. 2, at 37 ¶ 10.)  Bibeau also is a licensed attorney.  (Aplee. Apndx. 37 ¶ 8; A.R. Vol. 2, at 36 ¶ 8.)  He resides and provides legal services within the boundaries of the Leech Lake Reservation.  (Aplee. Apndx. 38 ¶ 11; A.R. Vol. 2, at 37 ¶ 11.)

Net income from self-employment generally is subject to federal income tax.  *See* I.R.C. §§ 1, 61, 63, 161.  Section 1401 of the Internal Revenue Code also imposes an income tax on self-employment income that funds Social Security and Medicare for self-employed individuals.  *See* Treas. Reg. § 1.1401-1(a) (self-employment taxes are levied, assessed, and collected as part of income taxes).  As relevant here, I.R.C. § 1402(a) defines the "net earnings from self-employment" taxable under §1401 to mean the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business . . . ."

For the 2016 and 2017 tax years, Bibeau earned self-employment income from legal work he did for the Bands, which he and his wife reported on their joint federal income tax return.   In 2016, Bibeau

-7-

reported $13,700 received from the Leech Lake Band of Ojibwe for legal work relating to an on-reservation election dispute. (Aplee. Apndx. 38 ¶¶ 12-13; *id.* at 89; A.R. Vol. 2, at 37 ¶¶ 12-13; *id.* at 234.) He also reported income of $5,899.87 from the Mille Lacs Band of Ojibwe for legal work in conducting historical research, data-gathering, compilation, and assembly of treaties with the Chippewa for the primary purpose of qualifying for federal funding for a tribal school. (Aplee. Apndx. 38-39 ¶¶ 14-15; *id.* at 90; A.R. Vol. 2, at 37-38 ¶¶ 14-15; *id.* at 235.)

In 2017, Bibeau received $32,500 from Honor the Earth, a native-led, non-profit organization, to provide legal representation before the Minnesota Public Utilities Commission regarding a proposed pipeline, to develop legal strategies for defending natural resources related to tribal and individual treaty rights on and off relevant reservations, and to work with tribes and other groups as necessary. (Aplee. Apndx. 40-41 ¶¶ 19- 20; *id.* at 91-92; A.R. Vol. 2, at 39-40 ¶¶ 19-20; *id.* at 239-240.)

Bibeau reported a large net operating loss carryforward that was enough to shield his income from the income tax imposed by I.R.C. § 1 for both 2016 and 2017. (Aplee. Apndx. 39 ¶ 17; *id.* at 42 ¶ 24; *id.* at 72-

-8-

74 Lines 21, 37, 43-44; *id.* at 80-82 Lines 21, 37, 43-44; A.R. Vol. 2, at 38 ¶ 17; *id.* at 41 ¶ 24; *id.* at 127-129 Lines 21, 37, 43-44; *id.* at 152-154 Lines 21, 37, 43-44.)  But that loss did not shield his law-practice income from the federal self-employment tax imposed under I.R.C. § 1401.  *See* I.R.C. §1402(a)(4).

On the 2016 return, Bibeau reported self-employment tax due in the amount of $2,101.  (Aplee. Apndx. 74 Line 57; A.R. Vol. 2, at 129 Line 57.)  Bibeau also reported an earned income tax credit of $506 which reduced the self-employment tax due to $1,595.  (Aplee. Apndx. 74 Lines 66a, 74, 78; A.R. Vol. 2, at 129 Lines 66a, 74, 78.)  On his 2017 return, Bibeau reported self-employment taxes due in the amount of $3,994.  (Aplee. Apndx. 82 Line 57; A.R. Vol. 2, at 154 Line 57.)

Bibeau did not pay the self-employment tax reported as owed on his 2016 and 2017 tax years, either by making estimated tax payments or submitting payments for those taxes with his returns or after filing. I.R.C. § 6654.  *See* Aplee. Apndx. 49; A.R. Vol. 2, at 57 (entry "03/21/2019AN" (referring to "balance due with se [*i.e.*, self-employment] income and no es[timated] payments"); Aplee. Apndx. 65-66; A.R. Vol. 2, at 120-121 ("Payment, Credit" column showing no

-9-

payments for 2016); Aplee. Apndx. 69-70; A.R. Vol. 2, at 124-125 (same, 2017). Certificates of Assessments and Payments (Forms 4340) in the record show that the IRS assessed self-employment tax in the amounts reported on the returns, *i.e.*, $2,101 for 2016 (although the amount outstanding due was reduced by the earned income tax credit of $506 reported on the return) and $3,994 for 2017. (Aplee. Apndx. 65 (2016), 69 (2017); A.R. Vol. 2, at 120 (2016), 124 (2017)).[5] The IRS also assessed accrued interest on the unpaid self-employment taxes and additions to tax of late-filing and failure-to-pay penalties for each year. (*Id.*) I.R.C. § 6651(a)(1), (2). The IRS also assessed an estimated tax penalty for 2017. (Aplee. Apndx. 69; A.R. Vol. 2, at 124.) I.R.C. § 6654.

The IRS issued a notice and demand for payment (or "Notice CP014") of the self-employment taxes owed, along with interest and penalties, for both years. (Aplee. Apndx. 51-52; A.R. Vol. 2, at 65, 68 (noting "CP014" for 2016 and 2017 liability, respectively); Aplee. Apndx. 66, 70; A.R. Vol. 2, at 121, 125 (noting issuance of "Statutory Notice of Balance Due" for 2016 and 2017, respectively). When Bibeau did not

---

[5] A Form 4340 is an "appropriate source[ ] evidencing the IRS's assessment and notice of tax arrears." *United States v. Meyer*, 914 F.3d 592, 594 (8th Cir. 2019) (quotation and citation omitted).

-10-

pay the balance due, the IRS issued a notice of intent to levy and notice of his right to a collection-due-process ("CDP") hearing. (Aplee. Apndx. 59-63; A.R. Vol. 2, at 102-106.)

The Code requires notice to the taxpayer of a right to a CDP hearing before a levy is made and guarantees the right to a fair hearing before an impartial officer from the IRS Independent Office of Appeals. I.R.C. § 6330(a), (b). In the CDP hearing, the taxpayer may raise "any relevant issue relating to unpaid tax or the proposed levy," including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. I.R.C. § 6330(c)(2)(A). The taxpayer may also challenge the existence or amount of the underlying liability if he "did not otherwise have an opportunity to dispute such tax liability." I.R.C. § 6330(c)(2)(B). After considering the issues properly raised by the taxpayer during the hearing, verifying that legal and administrative requirements were satisfied, and considering whether the collection action "balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary," the Office of Appeals issues a notice of determination setting forth its findings and decisions.

-11-

I.R.C. § 6330(c)(3); Treas. Reg. §301.6330-1(e)(3) (Q&A E8); *see Gillum v. Commissioner*, 676 F.3d 633, 644 (8th Cir. 2012). The taxpayer may then seek judicial review by filing a petition in the Tax Court within thirty days after the date of the notice of determination. I.R.C. § 6330(d)(1). The taxpayer has the burden of proving that the IRS's determination of his underlying liability is erroneous. Tax Court R. 142(a); *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013).

Here, Bibeau requested a CDP hearing on the ground that income for his legal work described above was not subject to federal income taxation. (Aplee. Apndx. 55-58; *id.* at 53-54; A.R. Vol. 2, at 88-91; *id.* at 80-81.) A telephonic hearing was held on September 17, 2019. (Aplee. Apndx. 50; A.R. Vol. 2, at 58 (entries of July 24 and September 17, 2019).) It is undisputed that Bibeau's underlying liability was properly raised at the CDP hearing. *See Montgomery v. Commissioner*, 122 T.C. 1, 10 (2004) (holding that taxpayer could challenge self-reported liability in a CDP proceeding).

On July 21, 2020, the Office of Appeals issued a notice of determination sustaining the proposed levy to collect the self-employment taxes owed. (Aplee. Apndx. 44-47; A.R. Vol. 2, at 43-46.)

-12-

The settlement officer verified that all requirements of applicable law and administrative procedures were satisfied. (Aplee. Apndx. 46-47; A.R. Vol. 2, at 45-46.) I.R.C. § 6330(c)(1), (3)(A). The settlement officer found that Bibeau challenged only the underlying liability, on the ground that under a treaty with the Chippewa a "modest income" is not subject to federal taxation.[6] (Aplee. Apndx. 47; A.R. Vol. 2, at 46.) I.R.C. § 6330(c)(2), (3)(B). But the settlement officer did not make any adjustment to liability. (Aplee. Apndx. 46-47; A.R. Vol. 2, at 45-46). The settlement officer also found that Bibeau did not offer any alternatives to collection. (Aplee. Apndx. 47; A.R. Vol. 2, at 46.) I.R.C. § 6330(c)(2)(A)(iii). Balancing the need for the efficient collection of taxes with Bibeau's legitimate concern that any collection action be no more intrusive than necessary, the settlement officer concluded that the

---

[6] Because Bibeau did not raise any other issue at the CDP hearing, he waived all other challenges he could have raised to the notice of intent to levy, include the additions to tax for 2016 and 2017. (Aplee. Apndx. 65, 69; A.R. Vol. 2, at 120, 124.) *Giamelli v. Commissioner*, 129 T.C. 107, 114 (2007). In any event, Bibeau waived any challenge to the Tax Court's decision sustaining the notice of determination as it related to the additions to tax by not raising it in his opening brief. *Chavero-Linares v. Smith*, 782 F.3d 1038, 1040 (8th Cir. 2015) ("Claims not raised in an opening brief [on appeal] are deemed waived.")

Appellate Case: 23-2923     Page: 23     Date Filed: 03/08/2024 Entry ID: 5371649

proposed levy was the least intrusive method to collect the taxes owed. (Aplee. Apndx. 47; A.R. Vol. 2, at 46.)[7]  I.R.C. § 6330(c)(3)(C). Accordingly, the Independent Office of Appeals sustained the notice of intent to levy.  (Aplee. Apndx. 44, 46; A.R. Vol. 2, at 43, 45.)

## B.     Proceedings in the Tax Court

### 1.     The petition and the parties' positions

Bibeau timely filed a petition seeking review of the notice of determination.  (Aplee. Apndx. 6-30; A.R. Vol. 1, at 1-25.)  The case was submitted on a stipulated record (Aplee. Apndx. 31-43, 93; A.R. Vol. 2, at 29-42, 249), and the parties briefed the issues (Aplee. Apndx. 4; Record Docket Sheet (entries 27, 29, 30)).

Bibeau argued, *inter alia*, that even though Indians were made citizens in the Indian Citizenship Act of 1924, ch. 233, 43 Stat. 253, 8

---

[7] In conducting balancing analysis, the settlement officer mistakenly referred to a "Notice of Federal Tax Lien" instead of a "Notice of Intent to Levy."  (Aplee. Apndx. 47; A.R. Vol. 2, at 46.) Although the rules for liens and levies are not identical (I.R.C. §§ 6320, 6330), they are substantially the same for purposes of the CDP hearing. *See* I.R.C. § 6320(c).  As the Tax Court found, Bibeau does not claim that he was prejudiced by the "mistake in nomenclature" and the notice "is therefore valid."  (App. 2 n.2; A.R. Vol. 3, at 308 n.2.)  *See John C. Hom & Assocs. v. Commissioner*, 140 T.C. 210, 213 (2013) ("Mistakes in a notice will not invalidate it if there is no prejudice to the taxpayer.")

Appellate Case: 23-2923     Page: 24     Date Filed: 03/08/2024 Entry ID: 5371649

U.S.C. § 1401(b), no federal statute expressly makes Indians subject to income taxation. (Aplee. Apndx. 96-97, 100-03; A.R. Vol. 3, at 5-6, 9-12.) With respect to the 1837 Treaty, Bibeau asserted that in *United States v. Brown*, 777 F.3d 1025 (8th Cir. 2015), this Court held that the 1837 Treaty guaranteed Chippewa Indians' right to make a "modest living" from the rights of "hunting, fishing, and gathering the wild rice" guaranteed in Article 5 of the Treaty. 777 F.3d at 1031. (Aplee. Apndx. 108-09; A.R. Vol. 3, at 23-24.) He asserted that the "hunt, fish, and gather concepts" in the 1837 Treaty, properly "translated," "are really food, clothing and shelter and the automobile is now the new canoe." (Aplee. Apndx. 107; A.R. Vol. 3, at 18; *see also* Aplee. Apndx. 100; A.R. Vol. 3, at 9.) Bibeau contended that his income from providing legal services was not subject to federal taxation because it was "intertribal, intramural earnings" for work on tribal-related matters and defending tribal natural resources "from which all Chippewa treaty beneficiaries have a right to earn part of their modest living." (Aplee. Apndx. 95-96; A.R. Vol. 3, at 4-5.)

More generally, Bibeau contended that, although none of the 44 treaties between the Chippewa and the United States expressly

-15-

addressed taxation, "[t]he power of taxation was part of a federally recognized tribe's sovereignty" (Aplee. Apndx. 97; A.R. Vol. 3, at 6) and that "[a]ny right not explicitly extinguished by a treaty or a federal statute is considered 'reserved' to the tribe" (Aplee. Apndx. 103; A.R. Vol. 3, at 12 (quotation and citation omitted)). He asserted that Congress had not expressly abrogated any treaty rights of the Chippewa so as to make him subject to the federal income tax. (Aplee. Apndx. 97-100; A.R. Vol. 3, at 6-9.) He further contended that the Indian Citizenship Act of 1924, which provides that the granting of citizenship status of Indians "shall not in any manner impair or otherwise affect the right of any Indian to tribal or other property," indicated Congress's intention to preserve rights that were implicitly reserved to a tribe, including the right to be free from taxation. (Aplee. Apndx. 96-97, 99, 101-02, 104-05, 111-12; A.R. Vol. 3, at 5-6, 8, 10-11, 13-14, 26-27.)

The Commissioner argued (*inter alia*) that it is well-established that Indians are subject to federal taxes absent a specific exemption in a statute or treaty and that no treaty or statute specifically provided such an exemption. (Aplee. Apndx. 114-22; A.R. Vol. 3, at 262-270.)

Appellate Case: 23-2923     Page: 26     Date Filed: 03/08/2024  Entry ID: 5371649

The Commissioner further contended that any rights guaranteed to the Chippewa Indians under the 1837 Treaty to a "modest living" from hunting, fishing, and gathering did not extend to a tax-free "modest living" derived from activities that are not hunting, fishing, or gathering, like Bibeau's legal work.  (Aplee. Apndx. 121-22; A.R. Vol. 3, at 269-270.)

### 2.    The Tax Court's opinion

The Tax Court found that under *Squire v. Capoeman*, 351 U.S. 1 (1956), Indians "are subject to federal tax laws unless there is a specific law or treaty that provides otherwise."  (App. 2; A.R. Vol. 3, at 308.) The Tax Court further held that the 1837 Treaty did not exempt Bibeau's self-employment income reported on the returns from federal taxation.  (App. 1-6; A.R. Vol. 3, at 307-312.)  The Tax Court acknowledged that the canons that require exemptions from income tax to be strictly construed are "in tension with" canons providing that treaties with Indian tribes must be construed in the sense in which the Indians understood them and construed liberally, with doubts resolved in favor of the Indians.  (App. 2-3; A.R. Vol. 3, at 308-309 (quotations and citations omitted).)  The court found, however, that the canon

-17-

telling it to construe Indian treaties favorably to Indians did not mean it could "create favorable rules." (App. 3; A.R. Vol. 3, at 309.) Thus, it found it could not disregard the Supreme Court's holding that exemptions to tax laws should be "'clearly expressed.'" (*Id.* (quoting *Capoeman*, 351 U.S. at 6).)

The Tax Court held that the 1837 Treaty did not create an express exemption from federal taxation. (App. 3-6; A.R. Vol. 3, at 309-312.) The court disagreed with Bibeau's construction of the treaty as protecting his right to make a "modest living" free of tax. (App. 3-4; A.R. Vol. 3, at 309-310). The court observed that the language of the treaty protects only "hunting, fishing, and gathering the wild rice" upon the property ceded. (App. 3; A.R. Vol. 3, at 309.) The court acknowledged that in *Brown*, 777 F.3d 1025, on which Bibeau relied, this Court concluded that the Indians' usufructuary rights under the 1837 Treaty included "'selling what they had hunted, fished, or gathered in order to make a *modest living*.'" (App. 3; A.R. Vol. 3, at 309 (quoting *Brown*, 777 F.3d at 1031).) The Tax Court concluded that, while hunting, fishing, and gathering might provide a modest living, the Treaty "does not clearly express an intent" that Chippewa Indians

-18-

reserved a right to "a modest *tax-free* living"—even directly from the hunting, fishing, and gathering specified in the Treaty. (App. 4; A.R. Vol. 3, at 310 (emphasis in original).) The Tax Court explained that *Brown* "made no holding about whether Chippewa would owe tax" for the commercial fishing at issue in that case, "much less a broad holding that includes an exemption from tax of any Chippewa earning a 'modest income' from any other source." (*Id.*) Rather, *Brown* held only that the Chippewa were not criminally liable under a federal law that, but for the Treaty protection, would have made their catching and sale of fish a criminal act. Thus, *Brown* did not support Bibeau's argument that the 1837 Treaty excepted any income from federal taxes.

In any event, the Tax Court concluded, nothing in the 1837 Treaty "expand[s] the activities that it protects beyond those it explicitly lists." (*Id.*) And it held that practicing law or conducting research "does not yield income derived from 'hunting, fishing, or gathering the wild rice," as explicitly protected in the Treaty. (*Id.*) The court further held that this Court's precedent precluded implying an exemption from tax on income from activities "not even mentioned in the treaty." (*Id.* (citation omitted).)

Appellate Case: 23-2923     Page: 29     Date Filed: 03/08/2024 Entry ID: 5371649

The Tax Court also rejected Bibeau's alternative argument that the absence of any language about taxation in any treaty with the Chippewa indicates tax immunity was reserved by the Chippewa. (App. 5; A.R. Vol. 3, at 311.) Because Congress has made Indians subject to federal income taxation like other U.S. citizens, and because tax exemptions are not granted to Indians by implication, the court concluded that "the absence of tax terms from a treaty does not imply [that] the Indians reserved their right to be free from taxation—instead, it means that an exemption from taxation does not exist." (*Id.*)

The court also found unpersuasive Bibeau's argument that the Indian Citizenship Act of 1924 provided an exemption here. (App. 5; A.R. Vol. 3, at 311.) To the contrary, the Tax Court found, this Court's opinion in *Fond du Lac Band of Lake Superior Chippewa v. Frans*, 649 F.3d 849 (8th Cir. 2011), "'squarely held that the Indian Citizenship Act maintained Indians' 'pre-existing right to tribal and other property' but 'does not create a tax exemption.'" (App. 5; A.R. Vol. 3, at 311 (quoting *Fond du Lac*, 649 F.3d at 851).)

Accordingly, the Tax Court rejected Bibeau's related argument that his income cannot be taxed because that right can only be

Appellate Case: 23-2923    Page: 30    Date Filed: 03/08/2024 Entry ID: 5371649

abrogated if it was clearly relinquished by treaty or modified by Congress. (App. 5 n.8; A.R. Vol. 3, at 311 n.8.) The Court explained that, because it was "constrained to hold that there is no such right," the court "need not discuss what it might take to relinquish it." (*Id.*)

Consequently, the Tax Court held that Bibeau's self-employment income is taxable. (App. 6; A.R. Vol. 3, at 312.) It entered a separate decision providing that the Commissioner may proceed with the collection of Bibeau's federal income tax liability for 2016 and 2017, as described in the notice of determination. (App. 7; A.R. Vol. 3, at 313.) Bibeau now appeals. (Aplee. Apndx. 124; A.R. Vol. 3, at 316.)

## SUMMARY OF ARGUMENT

Indians, as citizens of the United States, are subject to the same requirement to pay federal taxes as are other citizens, unless specifically exempted by a treaty or act of Congress dealing with Indian affairs. Bibeau does not point to any statute or treaty specifically exempting his self-employment income earned as an attorney from federal taxation, and the Tax Court therefore correctly held that his income is subject to self-employment tax as reported on the 2016 and 2017 returns.

Bibeau does not contend that his self-employment income is exempt from federal income tax under any provision of the Internal Revenue Code, and he therefore has waived any such argument. But there is no such Code provision in any event. Other U.S. citizens would be liable for self-employment income tax on income for performing legal services under the circumstances presented here, and no statute provides the express exemption Bibeau would need to avoid his self-employment income from legal at issue here. As the Tax Court correctly recognized, to imply an exemption based solely on his status as an Indian would run directly afoul of Supreme Court precedent. The Indian Citizenship Act of 1924 also does not provide an exemption from federal taxation here. This Court examined that statute in *Fond du Lac Band of Lake Superior Chippewa v. Frans*, 649 F.3d 849, 851 (8th Cir. 2011), and held that it "does not create a tax exemption."

No treaty provides such an exemption either. Bibeau urges that the 1837 Treaty between the Chippewa and the United States provides such an exemption. But the guaranty in Article 5 of the 1837 Treaty of the rights of "hunting, fishing, and gathering the wild rice" on lands ceded to the United States cannot reasonably be construed as creating a

Appellate Case: 23-2923     Page: 32     Date Filed: 03/08/2024 Entry ID: 5371649

complete exemption from federal income taxation for Chippewa Indians.
Article 5 does not refer to taxation or contain any terms that might
potentially address taxation. To be sure, this Court held in *United
States v. Brown*, 777 F.3d 1025 (8th Cir. 2015), that Article 5 protects
the Chippewa Indians' right to make a "modest living" (*id*. at 1031)
from selling what they have hunted, fished, or gathered. But as the Tax
Court held, the Treaty does not clearly express an intent that the
Chippewa Indians reserved a right to a modest living free from federal
taxation. Moreover, Bibeau's concession that none of the 44 treaties
between the Chippewa and the United States address federal taxation,
and that the Chippewa never contemplated such an exemption in their
negotiations, is fatal to his claim that an exemption from federal
taxation was clearly expressed in the 1837 Treaty.

In any event, the Tax Court correctly held that Article 5 of the
1837 Treaty certainly does not protect Bibeau's income from his legal
practice from tax. Practicing law is not akin to the usufructuary rights
of "hunting, fishing, and gathering the wild rice" included in Article 5.
As the Tax Court correctly held, the Treaty does not clearly express an
intent that the Chippewa Indians reserved a right to a modest *tax-free*

-23-

living even from the hunting, fishing, and gathering specified in the Treaty, much less from sources other than those expressly addressed in Article 5. Because the law is clear that exemptions from federal taxation are not granted to Indians by implication, Bibeau's argument that his self-employment income is exempt from federal taxation because it is derived from defending tribal treaty rights lacks merit.

The Tax Court's decision is correct and should be affirmed.

## ARGUMENT

### The Tax Court correctly held that Bibeau is subject to federal income tax on his self-employment income earned as an attorney in 2016 and 2017

#### Standard of review

When reviewing the Tax Court's decision in a CDP proceeding, this Court "appl[ies] the same standards as those applied by the tax court." *Avula v. Commissioner*, 221 F. App'x 468, 468-69 (8th Cir. 2007). In a CDP case in which the underlying liability is at issue (as it is here), the Tax Court and this Court review the underlying liability *de novo*. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *cf. Robinette v. Commissioner*, 439 F.3d 455, 458-59 & n.2 (8th Cir. 2006) (where the validity of the underlying liability is *not* at issue, an abuse of discretion standard applies).

-24-

This Court reviews the Tax Court's decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." I.R.C. § 7482(a)(1). It therefore reviews the Tax Court's conclusions of law *de novo* and its findings of fact for clear error. *Stuart v. Commissioner*, 841 F.3d 777, 779 (8th Cir. 2016).

## A. Individual Indians are subject to federal taxes unless specifically exempted by a treaty or act of Congress dealing with Indian affairs

The Constitution grants Congress "plenary power to legislate in the field of Indian affairs," *United States v. Lara*, 541 U.S. 193, 200 (2004); *see* U.S. Const., art. 1, § 8, cl. 3; and "[t]he right of tribal self-government is ultimately dependent on and subject to the broad power of Congress," *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980). Congress also has the "comprehensive" power to lay and collect taxes. *Steward Mach. Co. v. Davis*, 301 U.S. 548, 581-82 (1937).

Since 1924, all American Indians have been citizens of the United States. Indian Citizenship Act of 1924, ch. 233, 43 Stat. 253. And it has long been established that generally applicable federal tax statutes apply to Indians, as they do other citizens, without the necessity for any explicit language to that effect. *Federal Power Commission v.*

*Tuscarora Indian Nation*, 362 U.S. 99, 116-17 (1960); *Superintendent of Five Civilized Tribes v. Commissioner*, 295 U.S. 418, 419-20 (1935); *Choteau v. Burnet*, 283 U.S. 691, 694-95 (1931).

The Internal Revenue Code taxes "every individual" on "all income from whatever source derived," I.R.C. §§ 1, 61(a), unless the income is specifically excluded elsewhere in the Code, *see* I.R.C. §§ 101-140.  As specifically relevant here, the Internal Revenue Code imposes a tax on income from self-employment that is "assessed and collected as part of the income tax, must be included in computing any income tax deficiency or overpayment for the applicable tax period, and must be taken into account for estimated tax purposes." *Martin v. Commissioner*, 149 T.C. 293, 305-06 (2017); *see also* I.R.C. §§ 1401, 1402 (imposing tax on net self-employment income, which funds social security and Medicare for self-employed individuals); Treas. Reg. § 1.1401-1(a) (self-employment taxes are levied, assessed, and collected as part of income taxes); *Chase v. Commissioner*, T.C. Memo. 1990-164, 1990 WL 33360 (March 28, 1990) (stating that self-employment tax under § 1401 "is imposed in addition to other taxes but is levied,

-26-

assessed, and collected as part of the income tax"), *affirmed*, 926 F.2d 737 (8th Cir. 1991).

To be sure, the federal tax laws must be applied "with due regard to any treaty obligation of the United States which applies to [the] taxpayer." I.R.C. § 894(a)(1). But this Court and the Supreme Court have made clear that Indians are subject to the same requirement to pay federal taxes as are other American citizens, "unless specifically exempted by treaty or statute." *Jourdain v. Commissioner*, 617 F.2d 507, 509 (8th Cir. 1980); *see Capoeman*, 351 U.S. at 6 ("[I]n ordinary affairs of life, not governed by treaties or remedial legislation, [Indians] are subject to the payment of income taxes as are other citizens. We also agree that, to be valid, exemptions to tax laws should be clearly expressed"); *Superintendent of Five Civilized Tribes*, 295 U.S. at 420 (holding that where "[t]he general terms of the taxing act include the income under consideration," any exemption "must derive plainly from agreements with the Creeks or some act of Congress dealing with their affairs"); *Choteau*, 283 U.S. at 697 (same); *Holt v. Commissioner*, 364 F.2d 38, 40 (8th Cir. 1966) (same); *see also Clay v. Commissioner*, 990 F.3d 1296, 1300 (11th Cir. 2021); *Perkins v. Commissioner*, 970 F.3d

Appellate Case: 23-2923    Page: 37    Date Filed: 03/08/2024 Entry ID: 5371649

148, 155 (2d Cir. 2020); *United States v. King Mountain Tobacco Co., Inc.*, 899 F.3d 954, 960 (9th Cir. 2018).  Indeed, the Supreme Court "has repeatedly said that tax exemptions are not granted by implication" to Indians.  *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 156 (1973) (stating that the Court "has applied that rule to taxing acts affecting Indians as to all others" and that exemptions from federal tax "can not rest on dubious inferences") (quotation and citation omitted); *Jourdain v. Commissioner*, 71 T.C. 980, 990 (1979) (same), *affirmed*, 617 F.2d 507 (8th Cir. 1980); *see also Perkins*, 970 F.3d at 155.

**B.     Bibeau fails to identify any statute or treaty provision that would exempt his attorney income from federal taxation**

Bibeau points to no statute or treaty specifically exempting his self-employment income from his law practice from the tax imposed in I.R.C. § 1401(a).  Accordingly, the Tax Court correctly held that his income is subject to self-employment tax as reported on his 2016 and 2017 returns.

-28-

### 1. Bibeau fails to identify a statute providing an exemption here

#### a. No Internal Revenue Code provision exempts Bibeau's income from tax

Bibeau does not contend that his net self-employment income as an attorney providing legal services to the Leech Lake and Mille Lacs Bands of Ojibwe in 2016, and to Honor the Earth in 2017, is exempt from federal income taxation under any provision of the Internal Revenue Code, and he has waived any such argument. *Chavero-Linares*, 782 F.3d at 1040 (arguments not raised in appellant's opening brief are deemed waived).[8] And, indeed, there is no Code provision that expressly exempts his self-employment income from tax. Plainly, the income derived by a non-Indian from providing the same legal services to the Bands and to Honor the Earth would be subject to federal taxation. *See Holt*, 364 F.2d at 41 ("Unquestionably, income derived from [tribal] land held under a grazing permit by a non-Indian would be taxable."). So, too, is Bibeau's self-employment income in this case. To

---

[8] Bibeau also waived the issue by not raising it below. *Linden v. CNH Am., LLC*, 673 F.3d 829, 835 (8th Cir. 2012) (failure to raise argument before the trial court results in waiver of the argument on appeal).

Appellate Case: 23-2923    Page: 39    Date Filed: 03/08/2024 Entry ID: 5371649

conclude otherwise would be to grant a tax exemption solely because of Bibeau's status as a Chippewa Indian—a proposition that Supreme Court precedent clearly prohibits. *Capoeman*, 351 U.S. at 6; *Choteau*, 283 U.S. at 694-95; *see also Perkins*, 970 F.3d at 154 ("[A]bsent a specific exemption, American Indians are not, by virtue of their status, exempt from paying federal income taxes.") (citations omitted).

Bibeau's argument (Br. 3, 4-5, 7, 10-12, 14, 20, 30, 36-37) that Congress must expressly *authorize* the federal taxation of Indians before the income tax may apply to him ignores the clear authorization in Congress's usage of "every individual" in I.R.C. § 1. This authorization and binding precedent make clear that Indians are "subject to federal income tax unless specifically exempted by treaty or statute." *Jourdain*, 617 F.2d at 509; *see Capoeman*, 351 U.S. at 6.

> **b.** **The Indian Citizenship Act of 1924 does not create an exemption from federal income tax for Indians**

Bibeau's claim (Br. 5, 11, 12-13, 15, 35, 36-37) that the Indian Citizenship Act of 1924 created an exemption from federal income taxation for Indians is without merit. The Indian Citizenship Act provides that the granting of citizenship under the Act "shall not in any

-30-

manner impair or otherwise affect the right of any Indian to tribal or other property." Indian Citizenship Act of 1924, ch. 233, 43 Stat. at 253; 8 U.S.C. § 1401(b).

As the Tax Court found (App. 5; A.R. Vol. 3, at 311), this Court examined the language of that statute in *Fond du Lac Band of Lake Superior Chippewa v. Frans*, 649 F.3d 849 (8th Cir. 2001). There, the Fond du Lac Band challenged, on due process and preemption grounds, Minnesota's taxation of pension income earned from work in another state and received while the recipients were residing on the reservation in Minnesota. 649 F.3d at 850. As relevant here, the majority held that members of the Band were full citizens of Minnesota under the Fourteenth Amendment through the Indian Citizenship Act, providing a constitutional nexus for state taxation that satisfied due process. *Id.* at 850 (quotation and citation omitted), 851. Regarding the tribal property proviso in the Indian Citizenship Act, this Court found that it (and similar provisos in other Native American citizenship laws) reflected "a settled and persistent purpose on the part of Congress" to place individual Indians who had abandoned tribal relations "upon the same footing" regarding tribal property "as though they had maintained

-31-

their tribal relations." *Id.* at 851 (quotation and citation omitted). Accordingly, this Court held that "[i]n becoming United States and Minnesota citizens, Band members kept their pre-existing right to tribal and other property," but that the tribal property proviso "does not create a tax exemption." *Id.* at 851.

Relying on *Fond du Lac*, the Tax Court correctly held that the Indian Citizenship Act does not provide an exemption from federal income taxation here. (App. 5; A.R. Vol. 3, at 311.) Nothing in the majority or dissenting opinions in *Fond du Lac* questions, let alone purports to depart from, the rule in *Capoeman* and its progeny that Indians are subject to the federal income tax the same as other citizens and that exemptions from federal taxation must be "clearly expressed." *Capoeman*, 351 U.S. at 6. Bibeau's position (Br. 34-35) that his income is included in the term "other property" in the tribal property proviso (Indian Citizenship Act of 1924, ch. 233, 43 Stat. at 253; 8 U.S.C. § 1401(b)), even if correct, is immaterial because the tribal property proviso "does not create a tax exemption" in the first instance. *Fond du Lac*, 649 F.3d at 851.

-32-

### 2. The 1837 Treaty does not contain a federal tax exemption for Bibeau's income as an attorney

#### a. The relevant rules of treaty construction

As explained above, Indians are U.S. citizens subject to the federal income tax imposed on all citizens in the Internal Revenue Code "unless specifically exempted by treaty or statute." *Jourdain*, 617 F.2d at 509; *see also Capoeman*, 351 U.S. at 6; *Choteau*, 283 U.S. at 696. With regard to Indian treaty-based tax exemptions, the Supreme Court has instructed that such an exemption must "derive plainly" from the treaty itself. *Superintendent of Five Civilized Tribes*, 295 U.S. at 420; *see Lazore v. Commissioner*, 11 F.3d 1180, 1184 (3d Cir. 1993) ("[A]n exemption must be rooted in the text of a treaty"). Moreover, the Supreme Court has "repeatedly said that tax exemptions are not granted by implication[,] [and it] has applied that rule to taxing acts affecting Indians as to all others." *Mescalero Apache Tribe*, 411 U.S. at 156.

Supreme Court precedent also instructs that Indian treaties "should be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Cnty. of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 247 (1985) (internal citations omitted). In

Appellate Case: 23-2923   Page: 43   Date Filed: 03/08/2024 Entry ID: 5371649

the context of taxation, however, this principle "comes into play only if [the] treaty contains language which can reasonably be construed to confer income exemptions." *Holt*, 364 F.2d at 40; *accord Lazore*, 11 F.3d at 1185 (adopting the rule in *Holt* because it "gives appropriate weight to the notion that a treaty-based tax exemption must have a textual basis and accounts for the interpretive rules applicable to Indian treaties"); *Chickasaw Nation v. United States*, 208 F.3d 871, 884 (10th Cir. 2000) (adopting the rule in *Holt* and *Lazore*), *affirmed*, 534 U.S. 84 (2001).

### b. The 1837 Treaty cannot reasonably be construed as creating a federal tax exemption for Bibeau's self-employment income in 2016 and 2017

Bibeau contends, as he did in the Tax Court, that his income from providing legal services to the Leech Lake Band of Ojibwe, Mille Lacs Band of Ojibwe, and Honor the Earth is exempt from federal income tax under Article 5 of the 1837 treaty.[9]  Specifically, Bibeau contends that

---

[9] Bibeau contends in his appellate brief that, in addition to his legal work, he also earns income "through traditional, treaty-protected fishing, hunting, and wild rice-gathering" (Br. 5), which he claims is free from federal income tax.  In the Tax Court, Bibeau stipulated that he had income in 2016 and 2017, other than that earned from his legal

(continued…)

Appellate Case: 23-2923     Page: 44     Date Filed: 03/08/2024 Entry ID: 5371649

his income is exempt from federal taxation because he "defend[s] the tribal treaty protected rights held by other Chippewa" under the Treaty. (Br. 5; *see also* Br. 1; Aplee. Apndx. 96, 110; A.R. Vol. 3, at 5, 25.) He also appears to argue, as he did below, that Article 5 protects the right to make a "modest living" relating to treaty-protected activities. (Br. 29; Aplee. Apndx. 96, 106; A.R. Vol. 3, at 5, 15.) The Tax Court correctly rejected Bibeau's contentions.

As discussed above (pp. 25-28), Congress generally has authorized taxation of Indians. Article 5 of the 1837 Treaty does not expressly create, and cannot reasonably be construed as creating, a federal tax exemption. Article 5 states, in its entirety: "The privilege of hunting, fishing, and gathering the wild rice, upon the lands, the rivers and the lakes included in the territory ceded, is guaranteed to the Indians, during the pleasure of the President of the United States." (App. 94; A.R. Vol. 3, at 107.) In *United States v. Brown*, 777 F.3d 1025, 1028

---

work for the Leech Lake and Mille Lacs Bands of Ojibwe and Honor the Earth, but that it was taxable. (Aplee. Apndx. 40 ¶18; *id.* at 42 ¶23; A.R. Vol. 2, at 39 ¶ 18; *id.* at 41 ¶ 23; *see also* Aplee. Apndx. 95-96, 106; A.R. Vol. 3, at 4-5, 15; Aplee. Apndx. 19 ¶ 13; *id.* at 23 ¶ 10; A.R. Vol. 1, at 14 ¶ 13; *id.* at 18 ¶ 10.) In light of this stipulation, no income from activities expressly protected in Article 5—*i.e.,* hunting, fishing, and gathering wild rice—is at issue here.

Appellate Case: 23-2923    Page: 45    Date Filed: 03/08/2024 Entry ID: 5371649

(8th Cir. 2015), this Court held that the Chippewa Indians' exercise of the usufructuary rights enumerated in Article 5 included the right to "sell[ ] what they hunted, fished, or gathered in order to make a modest living" *Id.* at 1031. Thus, this Court in *Brown* affirmed the dismissal of an indictment against the Indian defendants under the Lacey Act, which makes it unlawful to sell any fish taken, possessed, transported, or sold in violation of any Indian tribal law (which in *Brown* included certain conservation codes). 777 F.3d at 1027 (citing 16 U.S.C. § 3372(a)(1)), 1030-32. But, as the Tax Court found (App. 4; A.R. Vol. 3, at 310), *Brown* did not address taxation of the fish sold—let alone hold that the Treaty provides a tax exemption.[10]

On its face, Article 5 contains no "clearly expressed" exemption from income tax. *Capoeman*, 351 U.S. at 6. Article 5 does not refer to taxation and, indeed, Bibeau asserts (Br. 25, 29) that the 44 treaties between the Chippewa and the United States "make no mention of tax, taxing or taxation." (*See* App. 55-120; A.R. Vol. 3, at 68-133.) Nor does

---

[10] We note that there is a statutory exemption from tax for income from the exercise of tribal fishing rights. *See* I.R.C. § 7873. But that provision sheds no light on whether the 1837 Treaty creates any further exemption beyond what is explicitly covered in the statute.

Appellate Case: 23-2923    Page: 46    Date Filed: 03/08/2024 Entry ID: 5371649

Article 5 (or the 1837 Treaty more broadly) contain other terms that might potentially address taxation. (App. 92-98; A.R. Vol. 3, at 105-111.) *See, e.g.*, *Jourdain*, 617 F.2d at 508-09 (affirming Tax Court's holding that the "molestation from the United States" prohibited by the 1795 Treaty with the Chippewa referred to "interference with the rights of Indians to hunt and otherwise enjoy their land, not the 'right' to be free from federal taxation").

In construing Indian treaties, courts "may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 431-32 (1943). But Bibeau offers no evidence that the parties intended to exempt tribal members from federal taxation. Indeed, he contends (Br. 25, 29) that the Chippewa Indians did not even *contemplate* addressing taxation in any of the 44 treaties. That contention is fatal to any argument that an exemption from federal taxation was "clearly expressed" in Article 5 of the 1837 Treaty such that an exemption remained after Congress's express authorization of the taxation of Indians. *Capoeman*, 351 U.S. at 6; *Jourdain*, 617 F.2d at 509.

Even if Bibeau's claim to an exemption from federal income taxation were not foreclosed by the absence of any exemptive language in the 1837 Treaty, or by his concession that the Chippewa Indians did not even consider taxation during negotiations, the Tax Court correctly held that Article 5 of the 1837 Treaty certainly does not exempt his self-employment income from his legal practice at issue here. (App. 94; A.R. Vol. 3, at 107.) As the court found, "[p]racticing law or conducting legal research does not yield income derived from 'hunting, fishing, or gathering the wild rice." (App. 4; A.R. Vol. 3, at 310; *see* Br. 3.) The court (App. 4; A.R. Vol. 3, at 310) correctly rejected Bibeau's attempt to re-write the treaty by "translat[ing]" it such that "hunt, fish and gather concepts are really food, clothing and shelter and the automobile is now the new canoe" (Aplee. Apndx. 107; A.R. Vol. 3, at 18; *see also* Aplee. Apndx. 100; A.R. Vol. 3, at 9).

Bibeau's contention that his attorney income is exempt from federal taxes because he "makes a living by defending the tribal treaty protected rights held by other Chippewa as usufructuary and reserved property rights" (Br. i; *see also* Br. 3) is an argument that the inclusion of specific usufructuary rights in Article 5 implies a broadly reaching

-38-

exemption for income earned in defending the rights listed in the Treaty. But the Supreme Court "has repeatedly said that tax exemptions are not granted by implication" to Indians. *Mescalero Apache Tribe*, 411 U.S. at 156 (stating that the Court "has applied that rule to taxing acts affecting Indians as to all others" and that exemptions from federal tax "can not rest on dubious inferences") (quotation and citation omitted); *Jourdain*, 71 T.C. at 990 (same). As the Tax Court found, interpreting the 1837 Treaty "to imply exemption from tax on income from activities not even mentioned in the treaty would undoubtably" create a new rule, which the Tax Court cannot do. (App. 4; A.R. Vol. 3, at 310 (citing *Jourdain*, 71 T.C. at 990).)

Accordingly, the Tax Court correctly concluded that although the 1837 Treaty protects Chippewa Indians' right to make a "modest living" from hunting, fishing, and gathering wild rice, *see Brown*, 777 F.3d at 1031, the Treaty "does not clearly express an intent that it means a modest, *tax-free* living" (App. 4; A.R. Vol. 3, at 310 (emphasis in original)). *See Estate of Peterson v. Commissioner*, 90 T.C. 249, 251 (1988) (holding that the language in Article 5 of the 1837 Treaty "cannot stretch . . . to provide petitioners with the necessary specific

-39-

exemption from [federal] taxation" on their income from fishing on ceded lands).  And certainly nothing in the Treaty, or any case law discussing it, supports Bibeau's contention that the Treaty exempts him from federal income tax on "modest living" earned from sources other than those expressly protected in the 1837 Treaty.  As the Tax Court correctly concluded, there is no textual support in the 1837 Treaty "to expand the activities that it protects beyond those it explicitly lists" (App. 4; A.R. Vol. 3, at 310), that is, "hunting, fishing, and gathering the wild rice" (App. 94; A.R. Vol. 3, at 107).

The Tax Court's conclusion on that score is consistent with this Court's examination of the 1837 Treaty in *Brown*, upon which the Tax Court primarily relied.  (App. 3-4; A.R. Vol. 3, at 309-310.)  To determine whether the defendants in that case could be indicted for violating the Lacey Act, this Court examined history and the negotiations surrounding the 1837 Treaty to determine the Indians' understanding of Article 5.  777 F.3d at 1027-29, 1030-32; *see Mille Lacs*, 526 U.S. at 196 ("[W]e interpret Indian treaties to give effect to the terms as the Indians themselves would have understood them"); *Choctaw Nation*, 318 U.S. at 432 (same).  This Court concluded that the

-40-

Chippewa "emphasized the importance of reserving" the usufructuary rights of hunting, fishing, and gathering in reaction to the United States' desire to purchase land in present-day Minnesota and Wisconsin "because of its desirable pine timber." *Brown*, 777 F.3d at 1028. After examining "the scope of the rights protected by the 1837 treaty," this Court concluded that "the emphasis of the Chippewa chiefs on usufructuary rights during their negotiations . . . indicate[d] that the Indians believed they were reserving unrestricted rights to hunt, fish, and gather throughout a large territory." *Id.* at 1031; *see also Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. State of Wis.*, 653 F. Supp. 1420, 1426 (W.D. Wis. 1987) (same). Although this Court found the usufructuary rights protected in the Treaty to be "broad," 777 F.3d at 1033, there is no indication from its thorough consideration of the 1837 Treaty to conclude that the Chippewa understood Article 5 to extend to any activities beyond those expressly identified in it—which do not include working as an attorney. *See id.* at 1027-29, 1030-32.

Similarly, and contrary to Bibeau's assertions (Br. 21, 28, 32-33), nothing in *Mille Lacs*, 526 U.S. 172, suggests that the rights

Appellate Case: 23-2923    Page: 51    Date Filed: 03/08/2024 Entry ID: 5371649

encompassed in Article 5 of the 1837 treaty extended beyond the activities of "hunting, fishing, and gathering the wild rice."  (App. 94; A.R. Vol. 3, at 107.)  As the Tax Court found (App. 3 n.5; A.R. Vol. 3, at 309 n.5), the Supreme Court in *Mille Lacs* simply held that the usufructuary rights to hunt, fish, and gather guaranteed in Article 5 were not abrogated by an 1855 treaty, by Minnesota's admission into the Union, or by an 1850 Executive Order by President Taylor.  526 U.S. at 195, 205, 207.  And insofar as Bibeau (Br. 12-13, 16, 17, 22-23) relies on *Mille Lacs* and *United States v. Dion*, 476 U.S. 734, 738 (1986), to argue that the Tax Court did not properly examine history and the treaty negotiations to determine what the Chippewa Indians understood about Article 5, this Court already did that work in *Brown*, upon which the Tax Court relied.  (App. 3-4; A.R. Vol. 3, at 309-310.)

Where, as here, "no treaty or statute expressly or impliedly exempt[s] [ ] income from taxation," "[t]here can be no question about the power of Congress to levy an income tax upon [it] . . . [t]he broad sweep of the income tax statutes reaches such income."  *Holt*, 364 F.2d at 42 (Indian subject to federal income taxation on profits derived from tribal land on which he held a grazing permit).  Accordingly, Bibeau

Appellate Case: 23-2923     Page: 52     Date Filed: 03/08/2024 Entry ID: 5371649

(Br. 24, 26, 32-33; *see also* Br. 2) erroneously relies on *Mille Lacs*, *Dion*, and *Menominee Tribe of Indians v. United States*, 391 U.S. 404 (1968), to argue that the Tax Court ignored that Congress's intent to abrogate treaty rights must be clearly expressed. Where there is no "clearly expressed" exemption from federal taxation in the treaty, *Capoeman*, 351 U.S. at 6, there is no treaty right to be abrogated. And because the 1837 Treaty cannot reasonably be construed as creating a tax exemption, the canon of liberally construing treaties in favor of the Indians does not apply in this context, contrary to Bibeau's assertions. (*See* Br. 6-7, 16 n.20, 17, 26; *see also* pp. 33-34, *supra*.)

Consistent with these principles, many courts have held that income earned by Indians as compensation for services to a tribe are subject to federal income taxes. Thus, this Court has held that the salary and expenses paid to a Chippewa Indian for his service as chairman of the tribal council, paid from a tribal fund held by the federal government for the tribe's benefit, is subject to federal income taxation. *Jourdain*, 617 F.2d at 509. Other courts have held similarly. *Hoptowit v. Commissioner*, 78 T.C. 137, 145-148 (1982), *affirmed*, 709 F.2d 564 (9th Cir. 1983) (per diem payments to Indian for service on

-43-

tribal council not exempt under treaty with Yakima Indians); *Doxtator v. Commissioner*, T.C. Memo. 2005-113, 2005 WL 1163978 (May 18, 2005) (compensation to judicial officer for Oneida tribe subject to federal income tax, including self-employment tax, where no treaty or statute specifically provided an exemption); *Allen v. Commissioner*, T.C. Memo. 2006-11, 2006 WL 177408 (Jan. 25, 2006) (compensation received from a tribe for work as vice chairman of tribal council members was federally taxable income, even though tribe was a non-taxable entity), *affirmed*, 204 F. App'x 564 (7th Cir. 2006).

Bibeau's legal work for the Leech Lake and Mille Lacs Bands of Ojibwe, and for Honor the Earth in "defending natural resources related to tribal and individual treaty rights" (Aplee. Apndx. 40 ¶ 19; A.R. Vol. 2, at 39 ¶ 19), is even farther removed from the work a tribal council member provides to a tribe. If the income of tribal officials—who directly serve the tribe's core interests of the self-governance and self-determination—is subject to federal income taxes, there is no basis for concluding that Bibeau's attorney income in 2016 and 2017 is not likewise taxable.

Appellate Case: 23-2923     Page: 54     Date Filed: 03/08/2024 Entry ID: 5371649

### c. Bibeau's remaining arguments are without merit

Bibeau's assertion (Br. 10, 12, 16, 22-24, 26, 34, 37) that there were no discussions about taxation surrounding any of the 44 treaties because the Chippewa were immune from taxation as a separate sovereign nation is meritless. Rejecting that same argument, the Tenth Circuit has found no merit to the Chickasaw Nation's contention that it was "a sovereign political entity immune from federal taxation." *Chickasaw Nation v. United States*, 208 F.3d 871, 880 (10th Cir. 2000), *affirmed*, 534 U.S. 84 (2001). The court stated that "[i]t is well settled that '[t]he right of tribal self-government is ultimately dependent on and subject to the broad power of Congress.'" *Id.* (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980)). *See also United States v. Anderson*, 625 F.2d 910, 916 (9th Cir. 1980) (holding that Indian's income derived from cattle ranching under a tribal license was subject to federal taxation and stating that "no provision in a tribal constitution could limit the taxing power of the United States, a superior sovereign, any more than such a provision in a state constitution could"). And even if a tribe is immune from federal income taxation, individual members of a tribe, who are U.S. citizens subject to

-45-

federal income tax like any citizen, are not. *Capoeman*, 351 U.S. at 6.
Accordingly, Bibeau's reliance (Br. 22 n.28) on *United States v. Winans*,
198 U.S. 371 (1905), for the proposition that the Chippewa reserved the
right of taxation so as to make the tribe or its members immune from
federal taxation is incorrect.[11]

Bibeau's related argument (Br. i, 16, 22, 24, 26, 29 n.41, 32) that
tribal "sovereign tax immunity" (Br. 26) is recognized in Article 1, § 2,
cl. 3 of the U.S. Constitution (relating to apportionment) and the
Fourteenth Amendment (relating to representation in Congress), both
of which refer to "Indians not taxed," also is entirely without merit.
"[C]onstitutional references to 'Indians not taxed' merely reflect the fact
that some Indians were not taxed by the states in which they resided;
the references do not restrain the federal government from taxing

---

[11] To the extent that this brief does not address precedent
identified by Bibeau (Br. 2) as pertinent to the issues presented here,
that precedent, as cited by Bibeau, is repetitive of general principles
cited elsewhere in his brief. For example, Bibeau (Br. 22 n.28) cites
*Washington v. Washington State Com. Passenger Fishing Vessel Ass'n*,
443 U.S. 658 (1979), for the principle that treaties must be interpreted
in the way the Indians would have understood them. Bibeau points to
*Mille Lacs*, *Dion*, and other cases for the same principle. (*See* Br. 6, 12,
16, 17, 21-22). The Chippewas' understanding of the 1837 Treaty is
addressed at pp. 40-42, *supra*.

Appellate Case: 23-2923     Page: 56     Date Filed: 03/08/2024 Entry ID: 5371649

Indians." *Jourdain*, 617 F.2d at 508-09; accord *Lazore*, 11 F.3d at 1187-88; *United States v. Willie*, 941 F.2d 1384, 1400 (10th Cir. 1991); *Dillon v. United States*, 792 F.2d 849, 852 n. 1 (9th Cir. 1986)).

Bibeau's contention (Br. 19, 25, 28-29) that silence in the 1837 treaty regarding taxation indicates that the Chippewa Indians reserved the right to be free from federal taxation is incorrect. Because the general taxing statute applies to Bibeau as to other citizens, *see* I.R.C. §§ 1, 61(a), the issue instead is whether the 1837 Treaty creates a clear exemption from federal taxation that would extend to Bibeau's self-employment income at issue here. *Capoeman*, 351 U.S. at 6; *Jourdain*, 617 F.2d at 509. As the Tax Court found, "the absence of tax terms from a treaty does not imply [that] the Indians reserved their right to be free of taxation—instead, it means that an exemption from taxation does not exist." (App. 5; A.R. Vol. 3, at 311.)

Bibeau bore the burden of showing that an exemption from federal income tax applies. Tax Court R. 142(a); *Thompson v. Commissioner*, 140 T.C. 173, 178 (2013). His failure to point to any treaty provision doing so is fatal to his claim. *See LaFontaine v. Commissioner*, 533 F.2d 382, 382 (8th Cir. 1976) (Chippewa Indian failed to demonstrate his

Appellate Case: 23-2923     Page: 57     Date Filed: 03/08/2024 Entry ID: 5371649

right to an exemption from federal income tax where, like Bibeau, he "cited more than thirty treaties, [but] failed to point to any provision in any of the treaties which exempts his wages from federal income taxation because he is an Indian"); *Manypenny v. Commissioner*, T.C. Memo 1992-260, 1992 WL 91506 (May 6, 1992) (Chippewa Indian liable for federal income tax where he failed to identify any treaty exempting his wages and self-employment income from federal taxation), *affirmed*, 995 F.2d 227 (8th Cir. 1992) (table); *Allen v. Commissioner*, T.C. Memo 2005-118, 2005 WL 1208509, at *2 (May 23, 2005) (Chippewa Indian was liable for federal self-employment tax for payments for her work as secretary or executive assistant to tribal president where she "has not cited any treaty or any legislation, and we have found none, that sets forth an explicit exemption from Federal income taxes for the type of income petitioner received for her work").

Appellate Case: 23-2923    Page: 58    Date Filed: 03/08/2024 Entry ID: 5371649

## CONCLUSION

The decision of the Tax Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Kathleen E. Lyon

| | |
|---|---|
| ELLEN PAGE DELSOLE | (202) 514-8128 |
| KATHLEEN E. LYON | (202) 307-6370 |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

MARCH 8, 2024

-49-

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]   this document contains <u>10,086</u> words, **or**

    [ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

3. Pursuant to Eighth Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses using Microsoft Windows Defender (updated daily), which reports that the file is virus-free.

(s)   <u>/s/ Kathleen E. Lyon</u>

Attorney for  <u>Appellee</u>

Dated:  <u>March 8, 2024</u>

Appellate Case: 23-2923   Page: 60   Date Filed: 03/08/2024 Entry ID: 5371649

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of March 2024, I electronically filed a PDF version of the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

   /s/ Kathleen E. Lyon   
KATHLEEN E. LYON
*Attorney*

Appellate Case: 23-2923   Page: 61   Date Filed: 03/08/2024 Entry ID: 5371649