No. 23-2923

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

———————————————

Frank W. Bibeau,

Appellant,

vs.

Commissioner of Internal Revenue,

Appellee.

———————————————

On Petition for Review of Final Order of the United States Tax Court, Docket No. 11483-20L

———————————————

## APPELLANT'S REPLY BRIEF

———————————————

Frank Bibeau (MN #306460)
BIBEAU LAW OFFICE
909 NW Ninth Street
Grand Rapids, MN 55744
Telephone: (218) 760-1258
Email: frankbibeau@gmail.com

*Attorney for Appellant*

# Table of Contents

**Table of Authorities** ................................................................ iii

ARGUMENT ................................................................................1

Indian Commerce Clause. ............................................................2

*Choteau* progeny of cases. ........................................................3

Indians and their property interests. ...........................................10

1924 Proviso. ..........................................................................10

Federal income taxation of Indians has never been expressly authorized by an Act of Congress. ....................................................................12

Due Process. ...........................................................................12

*FDL v Frans*, Judge Murphy dissent. ........................................15

*U.S. v Brown* (Minn. 2013). ....................................................19

   A. Method for Analyzing Potential Conflicts Between Treaties and Statutes .20

   B. Conflict Between the Lacey Act and the 1837 Treaty ..................22

   1. Scope of the 1837 Treaty's Protections ...................................23

CONCLUSION ...........................................................................24

CERTIFICATE OF COMPLIANCE ...............................................25

CERTIFICATE OF SERVICE ......................................................26

Appellate Case: 23-2923    Page: 2    Date Filed: 04/15/2024 Entry ID: 5383279

# Table of Authorities

## Cases

*Blackbird v. Commissioner*
(C.C.A.) 38 F.(2d) 976 (1912) ............................................................6, 7

*Bryan v. Itasca County*,
426 U.S. 373, 292 (1976).............................................................. 13, 18

*Choate v. Trapp*,
224 U.S. 665, 673, 32 S.Ct. 565, 56 L.Ed. 941 (1912) .....................................6, 8

*Cnty. of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation*,
502 U.S. 251, 269 (1992)..................................................................23

*Fond du Lac Band of Lake Superior Chippewa v Frans*,
649 F.3d 849, 851, (2011)
Rehearing and Rehearing En Banc Denied Oct. 13, 2011............................ passim

*Goodluck v. Apache County*,
417 F.Supp. 13 (1975)....................................................................16

*Iowa Mutual Ins. Co. v. LaPlante*,
480 U.S. 9, 18 (1987)....................................................................18

*Jourdain v. C.I.R.*,
617 F.2d 507, 509 (8th Cir.),
cert. denied, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980) ........................8

*McClanahan v. State Tax Comm'n of Ariz.*,
411 U.S. 164, 93 S.Ct. 1257 [1973].................................................9, 16

*Menominee Tribe v. United States*,
391 U.S. 404, 413, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968) ..............................3, 9

iii

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
526 U.S. 172, 196 (1999)................................................................................ passim

*Moe v. Confederated Salish & Kootenai Tribes,*
425 U.S. 463, 477 (1976)........................................................................9

*Montana v. Blackfeet Tribe of Indians*,
471 U.S. 759, 766 (1985)......................................................................23

*Oklahoma Tax Comm'n v. Chickasaw Nation,*
515 U.S. 450, 458 (1995)......................................................................10

*Santa Clara Pueblo v. Martinez*,
436 U.S. 49, 60 (1978)..........................................................................18

*Squire v. Capoeman*,
351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956)....................................... 1, 14, 17

*Trump v. Anderson*,
601 U.S. ----, 144 S.Ct. 662, 668 (2024) ............................................13

*United States v. Bresette,*
*761 F.Supp. 658 (D.Minn.1991)* .........................................................23

*United States v. Brown*,
2013 WL 6175202 .................................................................... 9, 20, 23

*United States v. Brown*,
777 F.3d 1025, 1031 (8th Cir. 2015).....................................................9

*United States v. Brown*,
824 F.Supp. 124, S.D. Ohio, W. Div. (1993) .........................................7

iv

*United States v. Dion*,
476 U.S. 734, 738, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986) ........................ passim

*United States v. Gotchnik*,
222 F.3d 506 (8th Cir.2000) ........................................................... 22, 23

*United States v. Smiskin*,
487 F.3d 1260 (2007) ....................................................................17

*United States v. White*,
508 F.2d 453, 456 (8th Cir.1974) ...................................................22

*United States v. Winans*,
198 U.S. 371, 380-381, 25 S.Ct. 662, 49 L.Ed. 1089 (1905) ...............19

*Washington v. Confederated Tribes of Colville Indian Reservation*,
447 U.S. 134, 152 (1980)................................................................9

*Washington v. United States*,
444 U.S. 816 (1979).......................................................................21

*Washington v. Washington State Commercial Passenger Fishing Vessel Assn.*,
443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979) ................................. 19, 21

*Williams v. Browman*,
981 F.2d 901, 903 (6th Cir.1992)......................................................7

*Winters v. United States*,
207 U.S. 564 (1908).......................................................................23

**Statutes**

18 U.S.C. § 1162 ............................................................................14

v

25 U.S.C. § 1321(b) .................................................................14

25 U.S.C. § 1322(b) .................................................................14

Indian Citizenship Act of 1924 ........................................... passim

Lacey Act (Game). 31 Stat. 187.................................................20

Public Law 280, 28 U.S.C. § 1360 ...........................................13

Revenue Act 1916, 39 Stat. 756...................................................4

Revenue Act of 1918 (40 Stat. 1057) ..........................................4

Revenue Act of 1924....................................................................1

## Other Authorities

Sixty-eighth Congress. Sess. I. Chap. 233
    Indians born in U.S. declared citizens, ...................................1

Appellate Case: 23-2923    Page: 6    Date Filed: 04/15/2024    Entry ID: 5383279

ARGUMENT

The Indian Citizenship Act was signed into law on June 2, 1924.[1]  Moreover, federal income taxation[2] of Indians has never been authorized by an Act of Congress, with clear and precise notice to the Tribes and Indians and with due process Congressional hearings about the intent of Congress to authorize federal taxation of all the *Indians not taxed*.  This *Indians not taxed* defense, using the *proviso* in the Indian Citizenship Act of 1924 (ICA 1924), is a case of first impression.

The Appellee's brief shows Indians have been taxed for decades before the ICA 1924, according to the *Choteau* Supreme Court cases, which is the root case cited and relied upon by the Commissioner.  The Tax court relies on *Squire v Capoeman*, which relies on *Choteau*.  Appellant explains how these courts have accepted, in the absence of *clear statutory guidance* and absent express congressional intent of federal taxation, the one-sentence ICA 1924 *sub silentio* inferred or implied a congressional grant of *generally applicable* federal taxation of Indians.  Incredibly, taxation of Indians was accomplished by the IRS and courts, without any traditional, basic Congressional due process of notice to the

---

[1] See Sixty-eighth Congress. Sess. I. Chap. 233 Indians born in U.S. declared citizens, p 253

[2] Id. Chap 234, Revenue Act of 1924, pp 253-354 (102-page act), the term Indian never mentioned.

1

Indians by express words of intent of federal taxation, which would constitutionally require an opportunity for Tribes and Indians to be heard at Congress before deprivation of important and significant property rights, privileges and (tax) immunities.[3]

<u>Indian Commerce Clause.</u>

No treaty or statute specifically provided such a tax exemption because Congress ended Treaty making in 1871 with Tribal nations and the 16th Amendment[4] for federal taxation of citizens was not ratified until 1913. However, the phrase "excluding Indians not taxed" appears in both Article I and the 14th Amdt. of the U.S. Const., which bookend and parallel the time span of the 44 Chippewa Treaties with the U.S.[5]

Appellant agrees that Congress has plenary power under the *Indian Commerce Clause* (U.S. Const., art. 1, § 8, cl. 3) and Treaties are the supreme law of the land. (Id. art. 6.) However, there is no legal basis for imputing a contrary understanding of the ICA 1924 *proviso*, which at any rate would constitute an

---

[3] See U.S. Const., art. 1, § 8, cl. 3 *Indian Commerce Clause* [The Congress shall have Power . . . ] To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes. See also *plenary power*.

[4] Id. Sixteenth Amendment: *The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.*

[5] See App 055, Ex. 2, Tax Ct Rec. V3 pp 67-73, *Table of Treaties Between the United States and the Chippewas From the Beginning to 1871.* (1785-1867)

Appellate Case: 23-2923    Page: 8    Date Filed: 04/15/2024 Entry ID: 5383279

abrogation of an important Treaty right by implication. *See, e.g., United States v. Dion*, 476 U.S. 734, 739 (1986)(treaty abrogation requires "clear evidence that Congress **actually considered** the conflict between its intended action on the one hand and Indian treaty rights on the other, and **chose** to resolve the conflict by abrogating the treaty ... We do not construe statutes as abrogating treaty rights in a 'backhanded way'.")(quoting *Menominee Tribe of Indians v. United States*, 391 U.S. 404, 412 (1968) )(emphases added).  Consequently, when Congress uses its plenary power to modify or abrogate a treaty status, interest, right, privilege, reserved rights or long recognized immunity of/with Indians, Congress has a trust responsibility and due process obligation to give notice of its intentions to the affected Indians and hold hearings.

*Choteau* progeny of cases.

The line of cases that Commissioner cites show that Indians being made citizens in 1924 was not necessary for the federal government to begin taxing Indians under the *general applicability* of various tax laws included in the scope of the 16th Amdt. *from whatever source derived*.  In 1931, the *Choteau*[6] Supreme Court held that a member of the Osage Tribe, holding *certificate of competency* was liable for income tax on his shares of income from tribal mineral leases under the Revenue Act 1918, §§ 210, 211(a) 213(a), 40 Stat. 1062, 1065; Act June 28,

_____

[6] See *Choteau v. Burnet*, 283 U.S. 691, 694-95 (1931).

3

1906, c. 3572, 34 Stat. 539.  The *Choteau* Court looked to the "language of sections 210 and 211(a)[7] subjects the income of 'every individual' to tax.  Section 213(a) includes income 'from any source whatever.'[8]  The Court reasoned the Revenue statute was intended to extend tax as far as possible to all species of income[9] without discussing the ICA 1924.

The *Choteau* Court did acknowledge that

> [t]he *petitioner urges several arguments* in support of the claim that he is not liable for tax under the Revenue Act of 1918 (40 Stat. 1057). These may conveniently be grouped into two main contentions: *First, that the statute evidences no intent to tax petitioner on such income; and, second, that, if its language is broad enough to cover his case, his status or the nature of the income, requires a holding that []he is exempt.*

> The language of sections 210 and 211(a) subjects the income of 'every individual' to tax. Section 213(a) includes income 'from any source whatever.' The intent of Congress was to levy the tax with respect to all residents of the United States and upon all sorts of income. The act does not expressly exempt the sort of income here involved, nor a person having petitioner's status respecting such income, and we are not referred to any other statute which does.

> *But it is said that, as to the income here taxed, petitioner is exempt because of his status as an Indian*. This assertion requires a reference to the policy of the government with respect to the Indians. *No provision in any of the treaties referred to by counsel has any bearing upon the question of the liability of an individual Indian to pay tax upon income derived by him from his own property*. The course of legislation discloses that the plan of the government has

---

[7] Id. at 600, citing 40 Stat. 1062.
[8] Id. at 693-694 citing  40 Stat. 1065.
[9] Id. Revenue Act 1916, 39 Stat. 756, as amended by Act Oct. 3, 1917, 40 Stat. 300.

4

been gradually to emancipate the Indian from his former status as a
ward; to prepare him for complete independence by education and the
gradual release of his property to his own individual management.
This plan has included imposing upon him both the responsibilities
and the privileges of the owner of property, including the duty to pay
taxes.

Id. (Emphasis added).

Here, the Court does not need to wait for Congress to decide and declare

when to emancipate the Indians. The *Choteau* Court never mentioned the ICA

1924 because it was not necessary to the existing taxation case of Osage Indians.

Here, the Court decides emancipation instead, without Congress, saying

[i]t does not follow, however, that [the Indians] cannot be subjected to
a federal tax. The intent to exclude must be definitely expressed,
where, as here, the general language of the act laying the tax is broad
enough to include the subject-matter.[10]

Here, the 1931 Court simply relies on a 1910 certificate of competency for

citizenship, a 1906 Act homesteading, 16th Amdt. and 1918 Revenue Act, using

*general applicability* concepts for federal taxation of an Indian before Congress

adopted the ICA 1924.

Four years later, in 1935 the *Five Civilized Tribes*[11] Supreme Court noted

that "Petitioner maintains that the court should have followed the rule which it

---

[10] Id. citing *Heiner v. Colonial Trust Co.*, 275 U. S. 232, 48 S. Ct. 65, 72 L. Ed.
256.
[11] *Superintendent of Five Civilized Tribes, For Sandy fox, Creek No.* 1263 *v.
Commissioner*, 295 U.S. 418, 419-20 (1935).

5

applied in *Blackbird v. Commissioner* (C.C.A.) 38 F.(2d) 976, 977" (1912)

> '[Blackbird's] property is under the supervising control of the United
> States. She is its ward, and *we cannot agree* that because the income
> statute, Act of 1918 (40 Stat. 1057), and Act of 1921 (42 Stat. 227),
> subjects 'the net income of every individual' to the tax, *this is alone
> sufficient to make the Acts applicable to her. Such holding would be
> contrary to the almost unbroken policy of Congress in dealing with its
> Indian wards and their affairs. Whenever [Indians] and their interests
> have been the subject affected by legislation they have been named
> and their interests specifically dealt with.*'

This does not harmonize with what we said in *Choteau*[.][12]

The *Five Civilized Tribes* Court recognized the *Choteau* Court was deviating

from the *almost unbroken policy of Congress* Indian Commerce Clause practices

recognized in *Blackbird* to laws of *general applicability* now unreasonably

requiring an express exclusion or exemption from limited, expressly written Acts

and Treaty sources, lamenting

> Nor can we conclude that taxation of income from trust funds of an
> Indian ward is so inconsistent with that relationship that exemption is
> a necessary implication. Non-taxability and restriction upon alienation
> are distinct things. *Choate v. Trapp*, 224 U.S. 665, 673, 32 S.Ct. 565,
> 56 L.Ed. 941 (1912). *The taxpayer here is a citizen of the United
> States, and wardship with limited power over his property does not,
> without more, render him immune from the common burden.*

Id. (Emphasis added).

---

[12] Id. 419 (Emphasis added).

This *Choteau* Court decision was examined and criticized, then accepted and

followed in the 1993 *Brown*[13] Court where

> [t]he Court has considered this matter with great sensitivity for two reasons. First, the Respondent is representing himself pro se, and it is well settled that pro se pleadings should be construed indulgently. *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir.1992) (per curiam). ***Second, the Court is well aware of the undeniably sordid relationship between the United States Government and the North American Indians throughout the history of this nation. We have therefore carefully considered this matter in light of the unique history and development of this specialized area of the law.***

Id. 125, *Background*. (Emphasis added).

In its opening analysis the *Brown* Court recalled and recounted that

> Prior to the Supreme Court's 1931 decision in *Choteau*[], general acts of Congress did not apply to Indians, "unless so expressed as to clearly manifest an intention to include them." See *Elk v. Wilkins*, 112 U.S. 94, 100, 5 S.Ct. 41, 44, 28 L.Ed. 643 (1884). Citing *Elk v. Wilkins*, the Tenth Circuit in *Blackbird v. Commissioner of Internal Revenue* held that the respondent Indian was exempt from the federal income tax, observing that "[i]t is well established that general Acts of Congress do not apply to Indians, unless so worded as clearly to manifest an intention to include Indians in their operation." 38 F.2d 976, 977 (10th Cir.1930) (citing *Elk*, 112 U.S. 94, 5 S.Ct. 41).

The *Brown* Court explained that

> In 1931, however, the United States Supreme Court, virtually without explanation, did what amounted to an "about-face" on statutory interpretation in the area of American Indian law. In *Choteau*[], the Supreme Court held that the Internal Revenue Act, a generally applicable act of Congress, applied to Indians. Id. at 694, 697, 51 S.Ct. at 600, 601. The Court stated that because the Internal

---

[13] *United States v. Brown*, 824 F.Supp. 124, S.D. Ohio, W. Div. (1993)(Emphasis added).

Appellate Case: 23-2923     Page: 13     Date Filed: 04/15/2024  Entry ID: 5383279

Revenue Act "does not expressly exempt the sort of income here involved, nor a person having petitioner's status respecting such income ..." the act applied to Indians. Id.[]. *The Court therefore, in one sentence, with neither explanation nor citation, eradicated over a hundred years of statutory interpretation requiring explicit inclusion of Indians,* see *Trapp*, 224 U.S. at 675, 32 S.Ct. at 569, *henceforth requiring explicit exemption of Indians to free them from the scope of statues of general application*. See *Choteau*, 283 U.S. at 693–94, 51 S.Ct. at 599–600; See also *Jay v. White*, *Taxing Those They Found Here* 53–56 (1972) [hereinafter "White"].

Regardless of its reasoning, however, the Supreme Court has spoken with abundant clarity in at least one respect. The prevailing rule by which we are bound is that general acts of Congress, including the Internal Revenue Code, apply to Indians unless a statu[t]e or a treaty expressly exempts them. *Fed. Power. Comm. v. Tuscarora Indian Nation*, [] (1960); [ . . .] *Jourdain v. C.I.R.*, 617 F.2d 507, 509 (8th Cir.), cert. denied, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980).

In *Tuscarora*, the petitioner Indians attempted to rely on *Elk v. Wilkins*, cited above, claiming that general acts of Congress did not apply to Indians unless so expressed as to clearly manifest an intention to include them. *Tuscarora Indian Nation*, 362 U.S. 99, 115–16, 80 S.Ct. 543, 552–53, 4 L.Ed.2d 584 (1960). The Supreme Court held that "[h]owever that may have been, it is now well settled by many decisions of this Court that a general statute in terms applying to all persons includes *Indians and their property interests*."[14]

Id. at 116.  (Emphasis added).

*Indians and their property interests* in *Tuscarora* is exactly what the

Congressional ICA 1924 *proviso* was addressing and attempting to protect, but

none of the Courts have been willing to consider the *proviso* half of the single

---

[14] *Tuscarora*  citing *Choteau* saying 'This does not harmonize with what we said in *Choteau v. Burnet* (1931)[.](Emphasis added).

sentence act from a property rights and true plenary power, trust responsibility, due process aspect. This Court needs to determine the *reasonable* meaning and Congressional intent of the ICA 1924 *proviso*, the see if Congress authorize taxation elsewhere.

In *FDL v Frans* dissent Judge Murphy argued the ICA 1924 decoupled taxation from citizenship, which the majority did not support saying it did not create a tax exemption. See *FDL v Frans*, Rehearing and Rehearing En Banc Denied Oct. 13, 2011. This Court should be examining this present case as a reconsideration of *FDL v Frans* as applies to a state taxing of an on reservation tribal member's out-of-state income from a Chippewa treaty rights perspective under *Mille Lacs*[15], *Dion*[16], *Brown*[17] and *Menominee*[18] for what the Indians understood at the time of treaties, because if citizenship were all that was necessary to give states authority to tax tribal members, the Supreme Court would not have rejected the imposition of state cigarette,[19] personal-property,[20] income,[21] or motor-

---

[15] *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196 (1999)

[16] *United States v. Dion*, 476 U.S. 734, 738, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986)

[17] *United States v. Brown*, 2013 WL 6175202 and *United States v. Brown*, 777 F.3d 1025, 1031 (8th Cir. 2015).

[18] *Menominee Tribe v. United States*, 391 U.S. 404, 413, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968).

[19] *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152 (1980).

[20] *Id.;* See also *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463, 477 (1976).

[21] *McClanahan*, 411 U.S. 164.

9

fuel taxes[22] on tribal members who reside within state borders and within Indian country.  This Court's *FDL v Frans* holdings need to be re-examined.

Indians and their property interests.

This is the disconnect from the ICA 1924 *proviso*, which clearly states "Provided, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property."   The *right of such person to tribal or other property* in the 1924 Congressional Act is the same concept and phrasing as shall not in any manner impair or otherwise affect the right *. . . of Indians and their property interests*. (See *Tuscarora*) There is no meaningful language difference, so why do the courts ignore the ICA 1924 *proviso's* property rights protection half of the single-sentence Act?

1924 Proviso.

Most important for the due process rights of Indian's is that the line cases including and following the *Choteau* Court have all failed to interpret the 1924 Act's *Proviso*, itself, before presuming *citizenship* the *so-called silence* grants Congressional guidance for federal taxation of Indians.  Appellee argues the Indians need a specific, express tax exemption from the same Congress, that silently, never gave notice of intent to tax Indians.  Congress was silent about

---

[22] *Oklahoma Tax Comm'n v. Chickasaw Nation,* 515 U.S. 450, 458 (1995).

taxation and everything else in 1924, *except* the ICA included an important *proviso* that has been ignored and not been interpreted appropriately by the Courts.

The proviso is clearly a protective notice and likely an express place-holder for future Congressional action, before anyone mistakenly infers or implies anything further from the term "citizenship" that might impair or affect Indians' property rights. The *proviso* creates a new, express statutory *due process* property right protection, with very clear, express congressional intent which "Provided, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property."[23] Other property in the case of Appellant includes a tax immunity property right held by the Chippewas. Tribal nation tax immunity recognition was *mutually understood and extended* by the parties *as nations*, several times in Treaties with the Chippewa.[24]

Here, the Chippewa have 44 Treaties[25] with the U.S. who recognized the Chippewa Nation's *jurisdiction* in the 1826 Treaty.[26] Nations do not tax other

---

[23] See Indian Citizenship Act of 1924, ch. 233, 43 Stat. 253 *current version codified* as 8 U.S.C. § 1401(b).
[24] See App 092, Ex. 6, Tax Ct Rec. V3 pp 105-111. (1837 Treaty with the Chippewa contains four (4) references to Chippewa nations. See also App 092, Ex. 3, Tax Ct Rec. V3 pp 62,67. (1825 Treaty Chippewa signatory *1st chief of the Chippewa nation*, Saulte St. Marie.)
[25] See App 055, Ex. 2, Tax Ct Rec. V3 pp 67-73.
[26] See FN 31 Appellant's Initial Brief, App 072, Ex. 4, Tax Ct Rec. V3 pp 84-95 .

Appellate Case: 23-2923     Page: 17     Date Filed: 04/15/2024 Entry ID: 5383279

nations.  Nations do not enter into treaties with their own citizens.  Consequently, what the Chippewa understood at the time of the treaties is the U.S. and all of its citizens understood and had common knowledge under their Constitution and 14th Amdt. that the Indians were not taxed.

<u>Federal income taxation of Indians has never been expressly authorized by an Act of Congress.</u>

Despite that lack of express congressional intent, guidance and authorization, federal courts have held Indians are taxable before Congress adopted the ICA 1924.  This Court decided in 2011 when considering *FDL v Frans* that "because citizenship provides a constitutional nexus, Minnesota's taxation complies with due process" under the 14th Amdt.[27]   The ICA 1924 was not briefed by the *FDL v Frans* parties, but instead argued by the divided panel without input.

<u>Due Process.</u>

Complete *due process*[28] is important because

[t]he Constitution states only one command twice. The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law."

And

The *Fourteenth Amendment*[29] contains a number of important concepts, most famously state action, privileges & immunities,

---

[27] See *Fond du Lac Band of Lake Superior Chippewa v Frans*, 649 F.3d 849, 851, (2011) Rehearing and Rehearing En Banc Denied Oct. 13, 2011.
[28] See https://www.law.cornell.edu/wex/due_process
[29] See https://www.law.cornell.edu/constitution/amendmentxiv

Appellate Case: 23-2923     Page: 18     Date Filed: 04/15/2024 Entry ID: 5383279

citizenship, due process, and equal protection—all of which are contained in Section One. [] *Section Five expressly authorizes Congress to enforce the Fourteenth Amendment "by appropriate legislation."*

Id. (Emphasis added).

Most recently, in *Trump v. Anderson*[30] the Supreme Court held that

[u]nder the Amendment, States cannot abridge privileges or immunities, deprive persons of life, liberty, or property without due process, deny equal protection [ . . . ] See Amdt. 14, §§ 1, 2. *On the other hand, the Fourteenth Amendment grants new power to Congress to enforce the provisions of the Amendment against the States*. It would be incongruous to read this particular Amendment as granting the States the power—silently no less—to disqualify a candidate for federal office.

Id. (Emphasis added).

But compare for *FDL v Frans*, "it would be incongruous to read this particular Amendment as granting the States the power—silently no less--- to [tax Indians]" without express authorization by Congress "by appropriate legislation"[31]. The ICA 1924 is not *appropriate legislation* about taxation. Consequently, it would also be incongruous to read this particular Amendment as granting the

---

[30] See *Trump v. Anderson*, 601 U.S. ----, 144 S.Ct. 662, 668 (2024)

[31] See Public Law 280, 28 U.S.C. § 1360. State civil jurisdiction in actions to which Indians are parties, "(b) *Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property*, including water rights, *belonging to any Indian* or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States." See also *Bryan v Itasca County*, 426 US 373, 392 (1976), *Reversing Bryan v. Itasca County*, 303 Minn. 395, 228 N.W.2d 249 (Minn. Mar 28, 1975).

Courts the power—silently no less--- to tax Indians without express Congressional authorization "by appropriate legislation". Therefore, the ICA 1924 does not pass the smell test of expressly authorizing taxation *by appropriate legislation* for the *FDL v Frans* Court for state taxation, or here now for federal taxation of Appellant.

This Court in *FDL v Frans* and the Tax Court in *Bibeau v CIR* relied on *Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956). In 1953, Congress created Public Law 280 which provides in part "[n]othing in this section shall authorize the alienation, encumbrance, *or taxation of any real or personal property*, including water rights, *belonging to any Indian* . . . in Indian Country.[32] Again, much like the ICA 1924, Public Law 280(b) denies state taxation *of any real or personal property*.

Further, all 44 Chippewa Treaties with the United States were ratified by 1867, which means the 5th Amdt. due process should be applied. The 5th Amdt. provides that *no person* shall be "deprived of life, liberty or property without due process of law." The term "no person" includes Indians and Appellant after the ICA 1924 and 5th Amdt. makes no reference to *Indians not taxed* and protects against unjust taking of *private (tribal or other) property* for public use, without just compensation.

---

[32] Id. *See also* 18 U.S.C. § 1162, 25 U.S.C. § 1322(b), and 25 U.S.C. § 1321(b).

Appellate Case: 23-2923    Page: 20    Date Filed: 04/15/2024 Entry ID: 5383279

The actual due process required between Congress exercising plenary power and trust responsibility, and Indians and Tribes with treaties and various rights, privileges and immunities under the Indian Commerce Clause of the United States Constitution *requires actual notice of the intended legislative impacts*, like federal taxation, to the affected Indians and Tribes and opportunity to be heard, at Congress before deprivations of property rights and interests.[33]  Moreover, "[t]he Supreme Court has made clear that if there is a treaty right that protects the relevant conduct, the question is whether Congress has abrogated that right, not whether the right has specifically exempted the party to the treaty from an Act that would otherwise generally apply." Id.  The ICA1924 was not an Act of *general applicability* on its face because (1) the Act applies only to Indians, and (2) the Act contains a *proviso* for *when citizenship should not be used as a status to impair tribal and other property*.  These tax immunity property rights are too important to be abrogated by implication, inference and absent clearly expressed intentions of Congress explaining why it is necessary, and if abrogating a property right, to compensate the taking.

*FDL v Frans*, Judge Murphy dissent.

When Congress adopted the ICA 1924, there was no express congressional intent to tax Indians.  In fact, Congress added an express, *due process proviso* to

_____

[33] See *Dion*, 476 U.S. at 737–40

Appellate Case: 23-2923    Page: 21    Date Filed: 04/15/2024 Entry ID: 5383279

protect tribal member's rights, privileges and immunities from being impaired or impacted by the imposed citizenship.  In her dissent in *FDL v Frans*, Judge Murphy explains that

> Congress extended citizenship to all Indians in 1924, including those taxed, but included an important caveat which is significant here [ . . . because] "conferring rights and privileges on ... Indians cannot affect their [taxation] situation, which can only be changed by treaty stipulation, or a voluntary abandonment of their tribal organization." *McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164, 173 n. 12, 93 S.Ct. 1257 [1973] (internal punctuation omitted). Section 1401(b) in fact decoupled Indians' taxation status from their citizenship, and a state may not deny an on reservation tribal member voting rights and equal protection even if that member does not pay state taxes. *Goodluck*, 417 F.Supp. at 16. Issued by a three judge panel and summarily affirmed by the Supreme Court, *Goodluck* undermines the majority's position because it held that Congress could and did extend citizenship to Indians without increasing states' ability to tax them. Id.

Judge Murphy dissent *FDL v Frans*, 854-855.

The express *due process required* proviso part of the ICA 1924 clearly states "under this subsection shall not in any manner impair or otherwise affect the right of such person to *tribal or other property*."  (Emphasis added).  This *proviso* part of the ICA 1924 has not been reasonably examined nor explained and therefore not fairly considered, by any court, including this *FDL v Frans* Court.  This Court used the 14th Amdt. *due process nexus* to the *citizenship act* to get to taxation of Indians, without first initiating a congressional 5th Amdt. *due process subsection required* (*proviso*) proceeding on the potential impacts or impairments of citizenship Indian before unreasonably inferring state taxation is now required of Indians by

16

appropriate legislation.[34]  Taxation, especially by a state is not what Congress

intended in 1924, 1953 or 1868.

The majority said "The proviso does not create a tax exemption."[35] This is

true, nor does the *proviso* allow the implication or inference of a taxation

authorization, it has other words with meanings in the same sentence.  Yet the

Commissioner has continued to collect those income taxes from tribal members for

the past 100 plus years.

This Court needs to examine Appellant's case under the *Mille Lacs*, *Dion,*

*Menominee* and *Brown* Chippewa treaty rights and reserved rights (tax immunity)

analysis.  This is important to avoid negative implications from the *Choteau* and

*Capoeman* line of cases relying on general applicability of laws involving other

tribes, in different states, and not involving Chippewa treaty analysis.[36]

---

[34] See majority in *Frans* at 851, retroactive conclusion that "In 1868, the
Fourteenth Amendment established, [']All persons born or naturalized in the
United States, and subject to the jurisdiction thereof, are citizens [ . . . and] of the
State wherein they reside [ . . and i]n 1924, Congress conferred citizenship on all
Native Americans born in the United States."
[35] Id.
[36] *United States v. Smiskin*, 487 F.3d 1260 (2007), citing *Mille Lacs* "we must
interpret a treaty right in light of the particular tribe's understanding of that right at
the time the treaty was made, and [*White Mtn. Apache Tribe v Bracker*] addressed a
different tribe, a different treaty, and a different right."

The rules of construction applicable in federal Indian law also support tribal tax immunity in this situation. First, treaties must be construed " 'in the sense in which they would naturally be understood by the Indians.'

The second canon of Indian law construction applicable to this matter is that which requires "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe*, 471 U.S. 759, 766 (1985); *see also Mille Lacs Band, supra*, 526 U.S. at 202-03 (1999)[] *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 18 (1987)("[b]ecause the tribe retains all inherent attributes of sovereignty that have not been divested by the federal government, the proper inference from silence ... is that the sovereign power ... remains intact"); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60 (1978)("a proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear legislative intent"); *Bryan v. Itasca County*, 426 U.S. 373, 292 (1976) (construing Public Law 280, observing that "Indians stand in a special relation to the federal government from which states are excluded unless the Congress has manifested a clear purpose to terminate [a tax] immunity and allow states to treat Indians as part of the general community")

<u>*U.S. v Brown*</u> (Minn. 2013).

The *Brown* Court provided the correct method for analyzing conflicts between Treaties and Statutes understanding Chippewa Treaties, ambiguities or absence of express language in consideration of historic practices and modernization of lifeways and equipment. The Chippewa hold exclusive usufructuary rights, privileges and immunities recorded in treaties, treaty journals and practices rooted in common law and mutual understandings of the historic sovereignty between nations.

The *Mille Lacs* Court explained that the canon for treaty construction begins with

> an examination of the historical record [which] provides insight into how the parties to the Treaty understood the terms of the agreement. This insight is especially helpful to the extent that it sheds light on how the Chippewa signatories to the Treaty understood the agreement because we interpret Indian treaties to give effect to the terms as the Indians themselves would have understood them.[37]

Here, the Chippewas, as a historic sovereign nation have 44 treaties with the United States. The Chippewa would also be included and commonly known as being *Indians not taxed* from the beginning treaties expressly in the U.S. Const.

---

[37] Id. 1201. See *Washington v. Washington State Commercial Passenger Fishing Vessel Assn.*, 443 U.S. 658, 675-676, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979); *United States v. Winans*, 198 U.S. 371, 380-381, 25 S.Ct. 662, 49 L.Ed. 1089 (1905). The *Winans* Court explained that "[i]n other words, the treaty was not a grant of rights to the Indians, but a grant of right from them,-a reservation of those not granted." *Winans* at 381.

Appellate Case: 23-2923    Page: 25    Date Filed: 04/15/2024 Entry ID: 5383279

and through the subsequent 14th Amdt. The unjust taking of Indian's *tribal and other property* by federal taxation of Indians using the first half of the only sentence in the 1924 Indian Citizenship Act and subsequent inclusion about citizens in 1401(b) in the absence of clear and express language giving congressional notice of intent to tax---violates tribal sovereignty rights, privileges and immunities and the required due process of the 5th Amdt. of the U.S. Const. The 14th Amdt. was adopted in 1868 after the civil war as a reconstruction statute when U.S. was still making treaties with Indians in 1871. For the Chippewa, when the last of 44 Treaties was conducted 1867, and the (1868) 14th Amdt. re-affirmed and re-declared congressional and express constitutional understanding of *Indians not taxed* for the then citizens, and for the Indians . . . who had not been taxed.

The 2013 *Brown* Court distinguished the general application of the century old Lacey Act[38] against tribal members holding exclusive 1837 Treaty[39] rights, privileges and immunities, for commercially netting and selling fish and explained the

> A. Method for Analyzing Potential Conflicts Between Treaties and Statutes
>
> The dispute here begins with how the Court should approach the issue. The Government urges the Court to look first, and only, to the Lacey Act to conclude that the Lacey Act applies to Indians, including

---

[38] Lacey Act (Game). 31 Stat. 187, ch. 553. Approved May 25, 1900. As amended by: Lacey Act Amendments of 1981.
[39] See App 092, Ex. 6, Tax Ct Rec. V3 pp 105-111.

Appellate Case: 23-2923   Page: 26   Date Filed: 04/15/2024 Entry ID: 5383279

these Defendants. This mirrors the approach employed by the Magistrate Judge. The Magistrate Judge applied an analysis in which he first queried whether the Lacey Act applies to Indians. After concluding that it did, the Magistrate Judge considered whether the Treaty specifically exempts Defendants from the Lacey Act, as, only then, after "a court determines that there is a treaty right that exempts Indians from the operation of a Federal statute of general applicability, [does] the court next ask[ ] whether that treaty right was abrogated by Congress." (R & R at 4, 6, Brown Docket No. 71. 4 ) Under this approach, which focuses on whether the Treaty exempts defendants from the Lacey Act, the Government argues that the 1837 Treaty rights are not at issue and do not affect the application of the Lacey Act to Defendants. *See, e.g.,* Resp. to Objections to R & R at 2, Sept. 20, 2013, Docket No. 80. ("Treaty rights are not at play here."))

In contrast, Defendants urge the Court to follow the approach adopted by the Supreme Court in cases presenting a potential conflict between a treaty and a statute. (*See, e.g.,* Mem. In Supp. of Obj. to R & R at 2, 5–6, Sept. 3, 2013, Brown Docket No. 76 (citing *United States v. Dion,* 476 U.S. 734, 738 (1986).) This approach involves determining first the scope of the treaty's protection—whether it protects the conduct at issue—and second whether Congress has specifically abrogated that protection.

The Supreme Court has made clear that if there is a treaty right that protects the relevant conduct, the question is whether Congress has abrogated that right, not whether the right has specifically exempted the party to the treaty from an Act that would otherwise generally apply. See *Dion*, 476 U.S. at 737–40 (after determining that treaty rights included an exclusive right to hunt and fish on the land, determined whether Congress specifically abrogated those rights); *Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 689–90 (analyzing first the scope of protection under the treaty and second whether Congress specifically abrogated that protection), modified sub nom. *Washington v. United States*, 444 U.S. 816 (1979).

The Court will follow the approach adopted by the United States Supreme Court in *United State v. Dion*: first considering the scope of the 1837 Treaty's protection and then whether Congress has explicitly

Appellate Case: 23-2923     Page: 27     Date Filed: 04/15/2024 Entry ID: 5383279

abrogated that protection. This approach has been used widely by other courts analyzing potential conflicts between Indian treaty rights and federal criminal statutes. See, e.g., *United States v. Gotchnik*, 222 F.3d 506, 509 (8th Cir.2000) (determining that defendants "clearly possess the right to hunt and fish in the ceded territory" under the Bands' Treaty and that the right had not been abrogated, before considering whether the Boundary Waters Act offended the treaty rights by prohibiting use of motorboats and motor vehicles in the area).

Moreover, the Court has found no Supreme Court precedent, and the Government has presented none, endorsing an approach that looks for a treaty to **exempt** Indians from the application of federal law rather than for the federal statute to **abrogate** the treaty rights. Given that the 1837 Treaty predates the Lacey Act (predating the present version of the Act by almost 150 years), it would make little sense for the Treaty to specifically and affirmatively exempt its beneficiaries from the Act. Cf. *United States v. White*, 508 F.2d 453, 456 (8th Cir.1974) ("Generally, in the case of a conflict between an Act of Congress and a treaty, the one last in date must prevail. However, a treaty will not be deemed to have been abrogated or modified by a later statute unless such purpose on the part of Congress has been clearly expressed." (citation omitted)).

B. Conflict Between the Lacey Act and the 1837 Treaty

Within this framework for considering the potential conflict between the 1837 Treaty and the Lacey Act, the parties do not dispute that the 1837 Treaty fishing rights apply to Defendants' activity on the Leech Lake Reservation. Rather, they dispute whether those rights encompass the netting and sale of fish and whether the Lacey Act applies to Defendants despite those rights. The Court therefore must first determine the scope of the 1837 Treaty's protection—whether it encompasses the conduct at issue and whether it precludes federal enforcement of tribal law. Second, the Court must determine whether Congress intended to abrogate any of these protections in passing the Lacey Act.

Appellate Case: 23-2923    Page: 28    Date Filed: 04/15/2024 Entry ID: 5383279

1.  Scope of the 1837 Treaty's Protections

In the first part of this analysis, the Court must determine whether the
1837 Treaty protects Defendants' right to engage in the conduct
underlying the indictments. Interpretation of Indian treaties is "guided
by special rules of construction." *Gotchnik*, 222 F.3d at 509. We are to
"interpret Indian treaties to give effect to the terms as the Indians
themselves would have understood them." *Mille Lacs Band*, 526 U.S.
at 196. Treaties are to be "interpreted liberally in favor of the
Indians," id. at 194 n. 5, and any ambiguities are to be resolved in the
Indians' favor, *Winters v. United States*, 207 U.S. 564, 576–77 (1908).
See also; *Cnty. of Yakima v. Confederated Tribes & Bands of Yakima
Indian Nation*, 502 U.S. 251, 269 (1992); *Montana v. Blackfeet Tribe
of Indians*, 471 U.S. 759, 766 (1985); *United States v. Bresette, 761
F.Supp. 658 (D.Minn.1991)* ("It is axiomatic that Indian treaty rights
are to be afforded a broad construction and, indeed, are to be
interpreted as the **Indians** understood them because the Indians were
generally unlettered and the government had great power over the
Indians with a corresponding responsibility toward them." (emphasis
in original)).

As a general matter, "Indians enjoy exclusive treaty rights to hunt and
fish on lands reserved to them, unless such rights were clearly
relinquished by treaty or have been modified by Congress." *Dion*, 476
U.S. at 738.

See *United States v. Brown*, 2013 WL 6175202, 3-6. Treaties are to be interpreted

"liberally, resolving uncertainties in favor of the Indians[.]" (citing *Mille Lacs*, 526

U.S. at 200)(Emphasis in original).

This Court affirmed *Brown* re-declaring that

Although Congress may abrogate Indian treaty rights, it must make its
intention to do so "clear and plain." *Dion*, 476 U.S. at 738, 106 S.Ct.
2216. There must be "clear evidence that Congress actually
considered a conflict between its intended action on the one hand and

Appellate Case: 23-2923      Page: 29      Date Filed: 04/15/2024 Entry ID: 5383279

Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty." Id. at 740, 106 S.Ct. 2216. The United States does not argue that Congress abrogated Chippewa fishing rights through the Lacey Act. That Act itself makes clear that Congress did not intend to abrogate Indian rights: it provides that

> [n]othing in this chapter shall be construed as ... repealing, superseding, or modifying any right, privilege, or immunity granted, reserved, or established pursuant to treaty, statute, or executive order pertaining to any Indian tribe, band, or community.

16 U.S.C. § 3378(c)(2).

Congress has thus not abrogated the rights asserted by defendants.

Id. at 1034 (2015).

Here, again, Congress includes a *proviso* ignored by the federal agency.

## CONCLUSION

The federal taxation of Indians has not been authorized or "altered" by an express act of Congress, silence is not consent. Appellant asks this Court to reverse the ruling of the Tax Court below and find that Congress never authorized the federal taxation of the income of Indians; or, in the alternative, to find that federal taxing authority cannot reach income derived from specific, treaty-protected activities.

Respectfully submitted:

Dated: April 15, 2024

/s/ Frank Bibeau
Frank Bibeau (MN #0306460)

24

# CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed. R. App. P.
     32(a)(7)(A), and it also complies with Fed. R. App. P. 32(a)(7)(B) because
     the brief contains 6,499 words, excluding the parts of the brief exempted by
     Fed. R. App. P. 32(f).

2.   This brief complies with the typeface requirements of Fed. R. App. P.
     32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because
     this brief has been prepared in a proportionally spaced typeface using
     Microsoft Office Word 2016, Times New Roman, Font Size 14.

3.   The undersigned also certifies that this brief has been scanned for viruses
     and is virus-free.


Dated: April 15, 2024                    /s/ Frank Bibeau

Appellate Case: 23-2923    Page: 31    Date Filed: 04/15/2024 Entry ID: 5383279

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the

Eighth Circuit by using the CM/ECF system. Participants in the case who are

registered CM/ECF users will be served by the CM/ECF system.


*/s/ Frank Bibeau*